## BAKER v. HALE.

1. LAND LAW. *Limitation. Successive possessions of trespassers.* There can be no privity between wrong doers. The successive possessions of trespassers cannot therefore be so connected as to make the bar of seven years under sec. 2 of the act of 1819, carried into the Code, sec. 2765.

  Cases cited: Vance v. Fisher, 10 Hum., 211; Moffit v. McDonald, 11 Hum., 457; Wells v. Ragland, 1 Swan, 501; Hobbs v. Ballard, 5 Sneed, 395.

2. SAME. *Same. Who not trespasser. Color of title.* A party in possession of land, under a parol contract of purchase, is not a trespasser. He has a colorable title descendible and alienable, and there exists between him and his alienee such a privity as to enable the latter to unite his possession with that of the alienor to make out the bar of the Statute against the true owner.

  Cases cited: Ray v. Goodman, 1 Sneed, 586; Marr v. Gilliam, 1 Col., 488.

3. SAME. *Landlord and tenant. Estoppel.* The doctrine of estoppel between landlord and tenant does not apply to the relation constructively existing between a holder of the legal title to land and one in possession thereof, under a verbal contract of purchase, but only to the actual relation of landlord and tenant created by contract.

  Cases cited: James v. Patterson, 1 Swan, 309; Gudger v. Barnes, 4 Heis., 570.

---

### FROM GREENE.

---

From the Circuit Court at Greeneville.

No record can be found.

NICHOLSON, C. J., delivered the opinion of the court.

Hale sued Baker in 1872 in ejectment for a tract of land in Greene county, and recovered judgment, from which Baker has appealed.

It is not denied that the legal title to the land is in Hale, but it is insisted for Baker that he has a

possessory title to the land sufficient to defeat plaintiff's action.

Hale's theory of the case, which he sustained by his own evidence, is, that being the owner of the land about 1846 he negotiated with one Turnbill for a sale of the land, and that they agreed on the terms, but that Turnbill declining to carry it into execution, agreed to rent the premises, and took possession as his tenant, and so held until 1864, when he learned for the first time that Turnbill was claiming to hold it for himself; and that in 1865 Turnbill sold and delivered possession to Baker.

The defendant was also examined, and stated that he purchased the land in controversy from Hale in 1846, but never got any written title; that he took possession under the parol purchase, and that he held and claimed it as his own until he sold and conveyed it to Baker in 1865. He denied that he ever rented the land from Hale, or ever held it as his tenant.

The Circuit Judge, among other things, charged the jury as follows: "If you enter as a tenant you cannot controvert the title of your landlord until you disclaim the tenancy, and after such disclaimer if you hold for seven years you can't be disturbed. A parol contract for the sale of land is void, and does not convey title—the party who goes into possession under a parol sale, under the act of 1819, would not, by holding for seven years, get a title. The holding for seven years under a parol contract may possibly give a defensive right, but does not give him a right transferable by deed. When he vacates the premises,

the right of possession reverts to the original owner, and his vendor cannot connect his possession under his deed so as to defend himself under the statute of limitations."

Under this charge the jury found for the plaintiff, and defendant has appealed.

The error assigned for defendant is, that the judge instructed the jury that if Turnbill held the land by parol, purchased from Hale, and conveyed it by deed to Baker, the possession of Turnbill could not be united with that of Baker to complete the bar of the statute of limitations of seven years. The proof was that Turnbill conveyed the land to Baker in 1865, and as the suit was commenced in 1872, and as the statute did not commence running until January 1, 1867, seven years of possession by Baker had not elapsed when the suit commenced. It is obvious, therefore, that the charge was fatal to the defense relied on by Baker.

It is settled by repeated adjudications in this State that the successive possessions of trespassers cannot be so connected as to make up the bar of seven years under the second section of the act of 1819, (Code, sec. 2765,) and for the reason that there can be no privity between wrongdoers. *Vance* v. *Fisher*, 10 Hum., 211; *Moffit* v. *McDonald*, 11 Hum., 457; *Hobbs* v. *Ballard*, 5 Sneed, 395; *Wells* v. *Ragland*, 1 Swan, 501.

But it is equally well settled that the possession of land by a purchaser by parol is not that of a trespasser or wrongdoer. It has been sometimes maintained that such a purchaser occupies the relation of

a tenant of the holder of the legal title, and therefore that his possesssion could not be adverse until his tenancy had been disclaimed. - This question was examined in the case of *James* v. *Patterson*, 1 Swan, 312, when the court announced the following conclusion, that, "admitting in its fullest extent, the principle, that one who is in possession, under a verbal purchase, is to be presumed, in the absence of all proof to the contrary, to hold in the character of tenant at will of his vendor, still it is a tenancy, arising not out of contract, but by mere implication or construction of law. And the doctrine of estoppel, as between landlord and tenant, has no application to such constructive relations—it applies only to the actual relation created by contract."

This doctrine was recognized as correct in the case of *Gudger* v. *Barnes*, 4 Heis., 570. It follows that if Turnbill had continued in possession, and had been sued, he could have defended successfully under his possession as a purchaser by parol.

But the Circuit Judge charged that as Turnbill got no title by his parol purchase, when he conveyed the land and transferred the possession to Baker, that the right of possession reverted to Hale who had the legal title.

That would have been true if Turnbill had been in possession as a trespasser or wrongdoer. But upon the hypothesis that Turnbill held and claimed the land under a parol purchase he was not a trespasser, but held adversely under his invalid parol purchase. *Ray* v. *Goodman*, 1 Sneed, 588.

The question then arises, was Turnbill's possessory

4—VOL. 6.

right such an interest in the land as would descend, or as could be transferred or conveyed to another? This question was elaborately examined by Judge Wright in the case of *Marr* v. *Gilliam*, 1 Col., 488. In that case it was held that the possession of the widow could not be tacked to that of her husband so as to make a defense, because there was no privity between the two possessions, but that the possession of the children could be tacked to that of their father because his possessory right was descendible and alienable. On this question Judge Wright approved and adopted the case of *Sawyer* v. *Kendall*, 10 Cushing Rep., 241, and says: "The well settled rule, as laid down in that case, is that to make a disseisin effectual to give title under it to a second disseisor, it must appear that the latter holds the estate under the first disseisor, so that the disseisor of one may be connected with that of the other. Separate successive disseisins do not aid one another where several persons successively enter on land as disseisors, without any conveyance from one to another, or any privity of estate between them other than that derived from the mere possession of the estate. Their several consecutive possessions cannot be tacked so as to make a continuity of disseisin of sufficient length of time to bar the true owners of their right of entry. To sustain separate successive disseisins, as constituting a continuous possession and conferring a title upon the last disseisor, there must have been a privity of estate between the several successive disseisors. To create such privity there must have existed, as between the different dis-

Baker v. Hale.

seisors, in respect to which a title by disseisors is claimed, some such relation as that of ancestor and heir, grantee and grantor, or devisor and devisee. · In such cases the title acquired by disseisin passes by descent, deed ˙or devise. But, if there is no such priority upon the determination of the possession of each disseisor, the seisin of the true owner reverts and is re-vested, and a new distinct assignee is made by each successive disseisor." ·

It is observed that Judge Wright recognizes the general doctrine that the successive possessions of trespassers or wrongdoers cannot be tacked together, and concludes that only those possessions can be so tacked in which the successive possessors hold the land as their own, and where there is a privity of estate between the several possessions.˙ In support of this position Judge Wright quotes Angell on Limitations, 446·; 1 Greenleaf's Cruise on Real Property, 53–4, note 4; 5 Peters, 402 ; 11 Peters, 41. In the last named case the court say, "if the ˙entry was made under claim or color of right, it is an ouster, otherwise it is a mere trespass. ˙ In legal language, the intention guides the entry and fixes its character." Also, 1 Chan. Law· Rep., 200·; 10 John Rep., 338; 7 Long & Rowl., 177; in which last case Judge Tilghman held, that one who ˙enters ˙upon land as a trespasser and continues to reside upon it, acquires something which he may transfer by deed as well as by descent, and such possessions may be tacked to constitute a bar. By trespasser, Judge Tilghman meant a disseisor, or one entering under a claim.

After a full review of the authorities Judge Wright says: "Whatever may be the *dicta* in our reports, we know of no adjudged case which contravenes the principle herein stated." Judge Wright then reviews the several cases in which the *dicta* referred to occur, and concludes as we think correctly, that none of them are in conflict with the principle laid down by him, except possibly the case of *Curtinger* v. *Catron*, 10 Hum., 24, and in reference to that case, he says: "the case did not call for the *dictum*, and that it is not supported by authority." The question in that case was, whether the interest acquired in land by a naked occupation of seven years is liable to execution? Judge Turley held that it was not, which holding is well sustained by authority, but he added, "no title is acquired to land so held, but a mere right of possession, which is not alienable or descendible." If Judge T. meant that the possessory right of a naked trespasser was not descendible or alienable, he was right, but if he meant that the possessory right of one who enters under claim of right and so holds, is not descendible or alienable, then, as remarked by Judge Wright, the *dictum* is not supported by authority.

The principle established by the case of *Marr* v. *Gilliam* is, that if several disseisors are in privity of estate, possessing and claiming title to the land, although their claims are invalid and void as against the true owner, the last disseisor may defend by connecting the several disseisins, and thus make up the necessary time to bar the action of the owner under the second section of the act of 1819. But in the

Baker *v.* Hale.

case at bar Turnbill entered, according to his theory of the case, not as a trespasser, but under a parol contract, by which he was to pay $200 for the land— $50 in cash and the residue in blacksmith's work; that he held and claimed the land as his own and adversely to Hale, having done blacksmith's work for him to the amount of about $400, although he had never paid the $50 in cash.

It. is clear that if these facts be true Turnbill had such a possessory right as was transferable to Baker, and that therefore Baker could defend by connecting his own possession with that of Turnbill. It was therefore erroneous in the Circuit Judge to withdraw from the jury the view of the case upon which Baker relied for his defense. The jury ought to have been left, under proper. instructions, to determine whether Turnbill held the land as Hale's tenant by contract, or whether he held it under contract of purchase.

For the error indicated the judgment is reversed and a new trial awarded.

FREEMAN, J., dissenting.

In this case I dissent from the opinion of a majority of the court for the following reasons, among others.

By the first section of the act of 1819, carried into the Code, sec. 2763, any one having had, by himself or those through whom he claims, seven years adverse possession of lands, granted by this. State, the State of

North Carolina, holding the same by conveyance, devise, grant, or other assurance of title, purporting to convey an estate in fee, without action effectually prosecuted against him, is vested with a good and indefeasible title to the land described in his assurance of title. This is the only section that purports, or was ever held to give any title to the adverse claimant.

By the second section, which is peculiar to our State, we believe, at any rate, had no existence in English jurisprudence which is transferred to the Code in secs. 2764, 2755. It is provided, first—"and on the other hand—that is, as contradistinguished from the effect given to the holding under the first section— any person, and those claiming *under him,* neglecting for the said term of seven years to avail themselves of the benefit of any title, legal or equitable, by action at law or in equity, effectually prosecuted *against* the person in possession, as in the foregoing section, are forever barred, and then the next provision is, no person, or any one claiming under him, shall have any action, either at law or in equity, for any lands, tenements, or hereditaments, but within seven years after the right of action accrued."

On the very face of these enactments it is seen that the first section gives a right to the possessor, and vests a title; but the other sections only bars the suit or right of action of the party holding the better title who fails to sue within seven years. It does not pretend to vest any right or title whatever in the possessor.

The effect of holding, without claiming under an instrument or conveyance purporting to give a fee simple, is only to defeat an action prosecuted against the party so holding, no more or no less.

The error, as I think, in the opinion of the majority, and of Judge Wright, in the case of *Marr* v. *Gilliam et als.*, 1 Cold., 489, is in making a distinction not made or contemplated by the statute, as between a person in possession of land under a contract *not purporting* to convey a fee simple, and a mere trespasser. In the one case it is claimed and held the party acquires a right or title which he may sell or dispose of, and which descends to his heirs, while in the latter case no such title is acquired. We take it this distinction is not warranted either by the language of the statute nor by any decission, except the opinion of Judge Wright, and I do not think it is supported by sound reason or policy. The statute makes no distinction as to the right acquired by a party claiming as disseisor and one under a contract, verbal or written, which does not purport to convey a fee simple, and we can see no reason why any should be made.

The effect of the holding of the majority of the court is to do away practically with the difference between the first and second sections of the act. A party in possession of land, but having no assurance purporting to convey a fee simple, has only to hold seven years, and die, or sell to another party, and then his heirs or vendee may protect themselves from suit by the real owner by virtue of the possession of

the ancestor or vendor, and hold seven years under the title by descent or under the deed, and then, by virtue of the first section, the fee simple title is vested indefeasibly in such heir or vendee. This cannot be prevented by the true owner, for the possession of the party who had no title for seven years, under this view, has barred, not only the action of the true owner against the possessor, but against all parties claiming under him. Thus the second section is made as effective to vest the title as the first, as I think, contrary to all the received views of our courts and of the profession, except the one isolated opinion of Judge Wright, which, with all proper deference, I think was a dictum, and if not, was subversive of the real purpose of the Legislature, as expressed in the statute.

In addition, to show the total inapplicability of the provisions of the last sections in a case where, as in the case before us, the party in possession holds by verbal contract, is shown by this: To what extent shall he be held to acquire his transmissible title? To the whole tract contained or included in the verbal contract, or only to the extent of his actual inclosure. Certainly, by all our decisions, having no writing to define his boundaries, he only holds to the extent of actual possession. Yet he gets the benefit, under this holding, of a contract to vest him with a right which he can sell, but which must be dropped at once when you come to define the possession, and he must abandon it—can take no benefit under it whatever, but must stand on his actual possession, and that alone.

Again, such a possessor sells and conveys by boundaries defining the whole tract. Shall the vendee hold possession to the boundaries of the deed, by virtue of the actual possession of, perhaps, only one acre by his vendor for seven years? or shall he only get the right of his vendor to the one acre actually held and occupied?

I think, with all respect for the opinion of a majority of my brethren, that to carry out this doctrine and apply it will involve the necessity of overturning the whole body of our law on this question, and bring our cases into such confusion that we will find it impossible ever to reconcile them. I therefore insist on holding to what I deem the well recognized doctrine—before the case in 1st Coldwell—that the possessor who holds without a conveyance or other assurance of title purporting to convey a fee simple, only has a right to maintain his possession against the party who holds the true title, but that he cannot sell or convey, either by contract or descent, any right or title to any one else.

Such, I think, is the plain meaning of the statute, and such the current of our decisions, as will be seen by the cases cited in notes to Code on the sections referred to. I think the doctrine and effect of a disseisin, and distinction between a disseisin and naked trespasser, while well founded in the common law, have no application whatever to the cases under our statute of 1819, and that to apply these distinctions to the statute is not warranted by the statute, nor by the sound analogies of the law.

For these and other reasons that might be given, I feel bound to dissent from the opinion of a majority of the court in this case.