CHARLES C. MOORE et al., Complainants-Appellants,
v. J. T. BRANNAN et al., Defendants-Appellees.—304
S. W. (2d) 660.

Middle Section. May 3, 1957.

Petition for Certiorari denied by Supreme Court July 29, 1957.

Moore & Moore, Chattanooga, for appellants.

Jeff D. Fults, Tracy City, Frank Davenport, McMinnville, for appellees.

HICKERSON, J. This is an ejectment suit. Complainants, Charles C. Moore et al., brought the suit against defendants, J. T. Brannan et al., to: (1) establish title; (2) regain possession; (3) remove defendants' claim to the land as a cloud upon complainants' title; and (4) for a reference to ascertain damages suffered by complainants because defendants cut timber from complainants' land.

The tracts of land in dispute are described in the bill, as follows:

"Situated partly in Marion and partly in Grundy Counties in the State of Tennessee, to-wit:

"Beginning where the County line between Marion and Grundy Counties crosses Cave Cove Branch in the Cave Cove; thence South 69 degrees East with the County line 79 poles to a stake in the West line of the Peter and Mark Anderson Entry; thence with said line South 6 degrees East 575 poles to the South line of Entry No. 1619, Grant No. 5196; thence with the South line of said Entry No. 1619 87 degrees West 28 poles to a stake at the foot of the mountain in Cave Cove; thence with the foot of the mountain as it meanders northerly to the beginning, containing 374 acres.

"Beginning at a point where the County line between Marion and Grundy Counties crosses Cave Cove Branch in Cave Cove, thence North 69 degrees West with the County line 372 poles to a stake in the West line of Entry No. 1619; thence South 3 degrees West with said line 700 poles to the Southwest corner of said Entry No. 1619; a stake; thence South

87 East 49 poles to a stake in the line of the Kilgore tract; thence North 2 degrees and 45 Minutes East 163 poles to the North line of said Kilgore tract on the Nathurst Spring Branch on the top bluff of the mountain; thence with said bluff as it meanders Southerly to the South line of said Entry No. 1619; Grant No. 5196; thence down the mountain with the South line of Entry No. 1619, South 87 degrees East 258 poles to a stake at the foot of the mountain; thence with the foot of the mountain as it meanders to the beginning, containing 1192 acres, and including 100 acres of mineral interest only, in two tracts.

"Beginning at a point where the County line between Marion and Grundy Counties crosses the Cave Cove Branch in Cave Cove; thence North 69 West with the County line 362 poles to a stake in the West line of said Entry No. 1619 by W. B. Shepherd; thence with the West line of said Entry No. 1619 North 3 East 85 poles to the Southwest corner of the TCI RR Co.; thence South 87 East 317 poles to a stake in the West line of the Peter and Mark Anderson entry; thence South with their line to the County line; thence with the County line to the beginning, containing 235 acres."

Defendants answered the bill and disclaimed any interest in complainants' land which lay outside twelve particular tracts of land, the specific descriptions of which were copied into the answer.

Defendants denied that they had trespassed upon complainants' land, but averred that they had "operated on their own land, and complainants have no legal right to interfere with them."

Complainants amended their bill in the following particulars:

"In this cause, on motion, complainants are allowed to amend their bill of record so as to except and exclude from the description of the land sued for the following:

"1st. The surface to the tract of land conveyed by Catherine M. Barrell to Matthew Trussell by deed dated May 24, 1873, registered in the Register's Office of Marion County, Tennessee on July 7, 1873, in Book K, page 375.

"2nd. The surface to a tract of land conveyed by Catherine M. Barrell to B. H. Wooten by deed dated May 24, 1873, recorded in the Register's Office of Marion County, Tennessee in Book K, page 374.

"Complainants' bill is limited to and seeks recovery for only the mineral interest in the said two tracts of land, the surface of which is herein excepted, together with the fee simple title to all the remainder of the land described in the bill."

Thereafter, complainants amended their bill a second time, as follows:

"In this cause, comes complainant and moves to dismiss his bill as to land embraced in W. F. Hargis Grant No. 13-464, issued June 10, 1898, which motion is granted, and complainant's bill dismissed as to the land embraced in said Grant."

On July 27, 1954, the Chancellor filed a memorandum opinion in which he held that: (1) complainants' claim was based upon a paper title deraigned from Barrell

Grant No. 5196, Shepherd Entry No. 1619; (2) complainants had established legal title to the lands in question by proving a legal chain of title in themselves from the State Grant; (3) complainants had failed to locate their land on the ground; and (4) defendants had not proved a possessory title to the lands they claim by proper location of their lands "on the ground" and by adverse possession.

Based upon the Chancellor's opinion, a decree was entered in the cause on September 13, 1954, which provided:

"That the cause be remanded to the rules for a survey by plaintiff and proof by either side."

Alleging new facts, complainants filed a "supplemental bill" in which they again included the W. F. Hargis Grant No. 13,464 of 772 acres in their bill, but excluded the Matthew Trussell surface right tract of 50 acres; the B. H. Wooten surface right tract of 50 acres; the John W. Wooten Grant No. 8867, Entry No. 1281, of 100 acres; the John W. Wooten Grant No. 12,559 based on Entry No. 1281; and the John W. Wooten Grant No. 14,529 based on Entry 630 for 100 acres.

Defendants answered the supplemental bill and set up a defense that complainants had dismissed their original bill in so far as the W. F. Hargis Grant No. 13,464 of 772 acres was involved and that such dismissal operated as a final decree on the merits; and the new suit or supplemental bill seeking to recover the W. F. Hargis Grant No. 13,464 of 772 acres could only be brought within one year from the date of dismissal and the supplemental bill was not filed within one year of such dismissal, so it was barred by T. C. A. sec. 28-106.

The final decree dismissing complainants' bill was entered on August 7, 1956, based upon an opinion filed on July 9, 1956. The opinion provides:

"Based upon the memorandum opinion filed in this cause July 27, 1954, wherein the Court held that there had been no survey, or proof of survey, which settled with reasonable certainty the question of the location of the land sued for, a decree was entered September 13, 1954, remanding the cause to the rules for a survey by complainant and proof by either side.

"Now the cause is again before the Court upon additional proof offered by both sides, the entire record and briefs, all of which have been considered.

"The Court is of opinion that the complainant continues to fail in the matter of identifying or locating with sufficient certainty the land in controversy. The conclusion is inescapable, as it was on the first and on the second hearing of this cause, that the correct location of Grant No. 5196 and the several tracts sued for has not been shown by the character of proof upon which this Court can predicate a decree.

"Therefore, the bill will be dismissed at complainant's cost."

Complainants prayed and were granted and perfected a broad appeal to this Court to review that final decree.

Two errors are assigned by complainants in this Court:

1. Did the trial court err in holding that complainants had not located W. B. Shepherd Entry No. 1619, Barrell Grant No. 5196, on the ground?

2. Did the Chancellor err in refusing to hold that compainants were the legal holders of title to the lands in question; in refusing to remove defandants' claim to the land as a cloud upon complainants' title; and in refusing to order a reference as to damages?

Two errors are assigned by defendants, which we quote:

1. "That the Chancellor erred in not sustaining the exceptions of defendants to the testimony of certain witnesses of complainants, to-wit: Clark Dykes, Ben Braden, Jim Braden, Jess Wooten and Coleman Dykes, which exceptions, and the reasons therefor were made in writing and before the Court at the time of the final decree."

2. "That the Chancellor erred in not sustaining the defendants' pleas of adverse possession of the lands described in their answer, and in not dismissing the bill for this reason also."

The foregoing assignments of complainants and defendants make three general determinative questions:

1. Did complainants locate Shepherd Entry 1619, Barrell Grant No. 5196 on the ground?

2. Did complainants locate the three tracts of land set out in their bill on the ground and show that they lay within the boundaries of Barrell Grant No. 5196?

3. To what extent, if any, have defendants proved possessory title to the lands described in the bill by adverse possession?

(1) The Chancellor correctly held that complainants had deraigned title from Shepherd Entry No. 1619 and

Barrell Grant No. 5196, based upon this Shepherd Entry. There was no appeal from this holding.

Complainants' bill was dismissed by the Chancellor because complainants had failed to locate their lands on the ground. More specifically, the Chancellor dismissed the bill on the ground that complainants had failed to locate Barrell Grant No. 5196 from which Grant complainants deraigned their title.

■ Our Supreme Court approved the following rule of law as applicable to such factual situations as we have in the case on trial; that is, when the controlling question is the location of the land on the ground. Southern Coal & Iron Co. v. Schwoon, 145 Tenn. 191, 239 S. W. 398, 403:

"The burden of the evidence on this point is upon the complainants. The rule of law which is to guide us in determining whether the complainants have met this burden is aptly stated in 1 Meigs' Digest, p. 540, as follows:

" 'Title to land cannot exist without boundary; the plaintiff must show a marked boundary, or some proof from which boundary can be ascertained, before he can say to the defendant, even though he is a naked possessor: "I have a better right to possess this particular piece of land than you have." But then, in order to establish boundary, it is not indispensably necessary that some particular corner or marked line should be proven to exist. If it be proven to have existed, or any monument, corner, or marks from which the boundaries called for in a grant or deed can be satisfactorily ascertained, according to any easy and natural interpretation, it is

sufficient. Nevertheless a grant can be lost for uncertainty in its boundary, there being no means by which its boundary can be defined. But not if by any reasonable means the intention of the contracting parties can be ascertained.' ''

■ Samuel B. Barrell Grant No. 5196 is dated May 13, 1837. Samuel B. Barrell, died. By his will, executed in 1857, he devised all of his realty to his wife, Catherine M. Barrell. The will was probated in 1858.

By general warranty deed, dated May 24, 1873, Catherine M. Barrell conveyed a portion of Samuel B. Barrell Grant No. 5196 to Matthew Trussell. Wherefore, the Trussell deed was executed by the widow of the grantee under Barrell Grant No. 5196, just thirty-six years after the grant was issued.

The Description of the Trussell deed is, as follows:

"A tract of land in Marion County, Tenn. District No. 10 and on Cumberland Mountain. Beginning on a stake with sugar tree and chestnut pointers just below said Trussell's fence and 579 poles W of W. B. Shepherd's S. E. corner of his 5000 acre entry; thence W. with said line 100 poles to a stake and spanish oak pointers 62 poles W of Hardbarger's N. W. corner then N. 23 degrees W. 80 poles to a hickory thence E. 100 poles to a Berch; thence S. 23 degrees E. 80 poles (the mineral on said land is hereby reserved) to the beginning, containing 50 acres: and the good and legal title to the same."

This description in the Trussell deed states on its face that the south boundary line of the Trussell 50 acres is a part of the south boundary line of the W. B. Shepherd

5,000 acres entry. Now, the W. B. Shepherd entry is the same land as Samuel B. Barrell Grant No. 5196. The beginning point, or the southeast corner of the Trussell 50 acres, seems to have been located with all practical certainty.

Jess Wooten testified he was seventy-seven years old and was a grandson of Matthew Trussell. Wooten was born and raised in that neighborhood. He stayed there until he was eighteen years old. He went with Paul Kelly, surveyor, and showed Kelly where the southeast corner of the Trussell 50 acres was. Wooten went into great detail. His grandfather had told him this corner was located about 75 feet below Salt Peter Cave. The corner was between two rocks and about midway between Salt Peter Cave and a hole in the ground below Salt Peter Cave. As a boy, Wooten went to school about 200 yards or 300 yards from the mouth of Salt Peter Cave. Matthew Trussell lived ''right up above the mouth of Salt Peter Cave there on the side of the mountain.'' Wooten testified: ''Us boys always figured that we could go in and come out of the cave at another place down below south of that.''

Paul Kelly surveyed from the starting point Wooten showed him. Paul Kelly corroborated the testimony of Jess Wooten. Kelly estimated the beginning corner of the Trussell tract was 138 feet below Salt Peter Cave when Wooten estimated that distance at 75 feet. However, Kelly and Wooten testified that Wooten went directly to the point his grandfather, Matthew Trussell, had showed him as the beginning point or corner of the Trussell land.

This beginning point is identified as the southeast corner of the Trussell 50 acres and the south line of the Trussell 50 acres is a part of the south boundary line of Barrell Grant No. 5196. This corner is further identified in the Trussell deed itself as being 579 poles west of the southeast corner of Barrell Grant No. 5196.

Barrell Grant is described on its face, as follows:

"Containing Five Thousand Acres by survey bearing date the 24th day of April, 1837, lying in Marion County, on Cumberland Mountain. Beginning at a stake and pointers, Robert Green's Southwest corner; thence North with said Green's line eight hundred poles to a stake and pointers, the Northwest corner of said Green's five thousand acre survey; thence West one thousand poles to a White Oak; thence South eight hundred poles to a Hickory; thence East one thousand poles to the beginning."

Robert Green's Southwest corner is identified as the Southwest corner of Barrell Grant No. 5088. Wherefore, as we run a line from the Southeast corner of the Trussell tract west 579 poles, we have established the Southwest corner of Barrell Grant No. 5088 and the Southeast corner of Barrell Grant No. 5196. Furthermore, since the South line of the Trussell 50 acres is a part of the South line of Barrell Grant No. 5196 and this South line of the Trussell land is 100 poles long, the Southwest corner of Grant No. 5196 is located by extending the South line of the Trussell land West 321 poles from the Southwest corner of the Trussell land. Robert Green's Entry 1504 is the same land as Barrell Grant No. 5088. We have, therefore, established on the ground the South boundary line of Barrell Grant No. 5196; the

Eastern boundary line of Grant No. 5196 and the Western boundary line of Grant No. 5088, this being the same line; the Southeast corner of Grant No. 5196; and the Southwest corner of Grant No. 5088, this being the corner common to these two grants; and the Northeast corner of Grant No. 5196 and the Northwest corner of Grant No. 5088, this being a corner common to these two grants. Now, by running a line West from the Northeast corner of Grant No. 5196 for a distance of 1,000 poles and by running a line North from the Southwest corner of Grant No. 5196, we established the Northwest corner of Grant No. 5196 at the intersection of these two lines.

The boundaries of Grant No. 5196, as set out in the grant, follow the foregoing lines exactly with one exception: the West boundary line of Grant No. 5088 is set out as being 807 poles; whereas, the same line in Grant No. 5196 is only 800 poles. The calls of Grant No. 5196 show that the East boundary line of Grant No. 5196 is identical with the West boundary line of Grant No. 5088. Each grant calls for 5,000 acres. The North and South boundary lines of each of these grants is 1,000 poles. We hold that the West boundary line of Grant No. 5088 should be 800 poles and not 807 poles. All the facts show this was the intention of Grant No. 5088, and we shall give effect to that intention.

A preponderance of the evidence of all witnesses who attempted to locate Grant No. 5196 on the ground with the maps and other exhibits support complainants' contentions and our conclusions in regard to the location of Grant No. 5196.

There is some testimony to the contrary derived mainly from scaling maps already made. We do not think such

evidence has the probative value of the evidence of the grandson of Matthew Trussell who was born and raised until he was eighteen years old in that community. He played in Salt Peter Cave; went to school within 200 yards to 300 yards of the cave; and went directly to the the point his grandfather, Matthew Trussell, had shown him as being the Southeast beginning corner of the Trussell 50 acres tract. Having located the South boundary line of the Trussell land, the other corners of that fact and the boundary lines of Grant No. 5196 fall into pattern.

In support of the foregoing conclusions, C. H. Dykes, with Mr. W. A. Patten, made a complete survey of Grant No. 5196 and Dykes testified that complainants had substantially located Grant No. 5196 on the ground and that the several surveys located the land covered by Grant No. 5196, "within twenty feet of one another."

W. G. Cline, a surveyor, testified that complainants had correctly located Grant No. 5196 and the Matthew Trussell 50 acres as shown by the maps filed in evidence.

There is another fact and the circumstances surrounding it which deserve mention as having considerable probative value in support of complainants' location of these lands. The Matthew Trussell deed was executed, delivered, and recorded about thirty-six years after Grant No. 5196 was issued. The widow of the original grantee named in Grant No. 5196 was the grantor in the Trussell deed. The description in the Trussell deed specifically shows the South boundary line of the Trussell land as coinciding with and being a part of the South boundary line of Grant No. 5196 and the Southeast corner of the Trussell land, described as being 579 poles from the

Southeast corner of Grant No. 5196. It seems reasonable to us to infer that the parties to the Trussell deed had more accurate knowledge of the location of the Trussell land on the ground in its relation to Grant No. 5196 than Mr. H. E. Brannan would have 120 years after the grant issued when Mr. Brannan testified he had never surveyed the land in question but arrived at his factual conclusions by "scaling" maps in evidence as exhibits to the testimony of complainants' witnesses.

(2) Did complainants locate the lands described in the bill on the ground?

Each of the three tracts of land described in the bill has the same beginning corner which is stated to be "where the County line between Marion and Grundy Counties crosses Cave Cove Branch in the Cave Cove." Of course, this is a beginning point which is easily located on the ground for the Cave Cove and Cave Cove Branch are clearly defined. These three tracts of land are fairly shown in their relation to Barrell Grant No. 5196 on the map filed as Exhibit 3 to Coleman Dykes' testimony. The lands are also shown on the map filed as Exhibit 2 to Garrison, though not so clearly, in relation to Barrell Grant No. 5196 as they are shown on the Coleman Dykes map. It is definitely established that the lands set out in the bill lie within the boundary lines of Barrell Grant No. 5196.

Defendant, H. E. Brannan, testified that, "using the description and other information available which we believe to be correct," the Trussell tract deeded by Mrs. Catherine Barrell to Matthew Trussell would, of course, fall within the location of Grant No. 5196 as shown on complainants' maps. Each description of the land in the

bill makes direct reference to Barrell Grant No. 5196, using one or more boundary lines of that grant as boundary lines of the lands described in the bill. Complainants did show that the lands sued for lie within Grant No. 5196 and correctly located the lands sued for on the ground.

(3) To what extent, if any, have defendants proved a possessory title to the lands described in the bill by adverse possession?

Specifically, defendants claim title to twelve tracts of land described in their answer; and defendants expressly disclaim title to any of the land described in the bill, except the twelve tracts described in their answer.

■ Evidence of adverse possession is strictly construed, every presumption being in favor of the holder of the legal title. Harrison v. Beaty, 24 Tenn. App. 13, 137 S. W. 2d 946; Smith v. Cross, 125 Tenn. 159, 140 S. W. 1060.

■ A quitclaim deed conveys all the title the grantor then had unless its language compels some other construction. If the grantor had no title, he could convey no title. Manhattan Savings Bank v. Bedford, 161 Tenn. 187, 30 S. W. 2d 227; Southern Iron & Coal Co. v. Schwoon, 124 Tenn. 176, 135 S. W. 785.

■ A grant from the State is of no force to transmit title to land where the State had previously granted the same land and, therefore, had no interest in the land which it could convey. Smith v. Cross, 125 Tenn. 159, 140 S. W. 1060.

■ Where several grants are in conflict, the oldest grant carries the legal title. Kittel v. Steger, 121 Tenn. 400, 117 S. W. 500.

■ The intention of the grantor governs in the construction of a deed. Franklin v. Jones, 28 Tenn. App. 528, 191 S. W. 2d 835; Templeton v. Stong, 182 Tenn. 591, 188 S. W. 2d 560.

■ The burden of proving adverse possession is upon the party who relies on it, since all presumptions are in favor of the holder of the legal title. Buchanan v. Nixon, 163 Tenn. 364, 43 S. W. 2d 380, 80 A. L. R. 151.

■ Defendants could prove possessory title to the disputed land in themselves so as to defeat complainants' legal claim to the land by proving twenty years actual adverse possession of the land without assurance of title. Walsh v. Rose, 29 Tenn. App. 78, 193 S. W. 2d 118.

■ W. F. Hargis is the original grantee from the State of Tennessee to this 772 acres. The grant was not recorded in Marion County, Tennessee. Hence, this W. F. Hargis Grant No. 13,464 could not be the basis of a claim of adverse possession based upon a registered color of title. This question was directly ruled in Smith v. Cross, 125 Tenn. 159, 140 S. W. 1060, 1064, where the Court said:

"The grant itself was of no force to transmit title to the land in controversy because the state had previously granted the same land to Josiah Terry and had no interest left which it could grant or convey. Its new grant thereafter could only serve as an assurance of title, to be made effective by seven years' adverse possession thereunder, as the deed of any

private person, and like such deed required to be registered in the county where the land lay. This is in accordance with the very terms of the Acts of 1895, c. 38. This act declared that no title should be vested by virtue of adverse possession unless the 'conveyance, devise, grant, or other assurance of title' under which such possession was claimed, should have been registered for the full term of seven years in the county.''

The original grantee, W. F. Hargis, conveyed this tract of 772 acres to W. M. Scruggs by a deed which provides that the grantor, ''do hereby devise, release and forever quitclaim unto said W. M. Scruggs and his heirs and assigns all my title, interest and estate legal and equitable in the following premises.''

Barrell Grant No. 5196 covers the land attempted to be granted to W. F. Hargis by Grant No. 13,434. Since Barrell Grant No. 5196 is older than W. F. Hargis Grant No. 13,434, the Barrell Grant No. 5196 is superior to the Hargis Grant No. 13,434. Kittel v. Steger, supra.

John W. Wooten Grant No. 8867 for 100 acres dated May 27, 1843, lies wholly within Barrell Grant No. 5196. The Barrell Grant being the older of these two grants, John W. Wooten Grant No. 8867 cannot convey legal title. The State of Tennessee did not hold title to the land described in the John W. Wooten Grant No. 8867 when this grant issued. Having no interest in the land, the State could convey no interest in the land covered by John W. Wooten Grant 8867. This last grant was not recorded in Marion County, Tennessee. The entry was surveyed and placed of record in Marion County, Tennessee.

For some reason the State issued to John W. Wooten a second grant which covered the identical grant which was granted under Grant No. 8867. The new grant was No. 12,559. Both grants show they were based upon the same Entry No. 1281. John W. Wooten was issued another grant which joins his Grant No. 8867. The number of this new grant was 14,529 and based upon Entry No. 630. Grant No. 8867 and Grant No. 14,529 called for 100 acres each. They are adjacent to each other with Grant No. 14,529 lying Southwest of Grant No. 8867.

There are four statutes in Tennessee and one common law rule which pertain to limitations of actions relating to realty.

T. C. A. sec. 28-201 provides:

"Any person having had, by himself or those through whom he claims, seven (7) years' adverse possession of any lands, tenements, or hereditaments, granted by this state or the state or North Carolina, holding by conveyance, devise, grant, or other assurance of title, purporting to convey an estate in fee, without any claim by action at law or in equity commenced within that time and effectually prosecuted against him, is vested with a good and indefeasible title in fee to the land described in his assurance of title. But no title shall be vested by virtue of such adverse possession, unless such conveyance, devise, grant, or other assurance of title shall have been recorded in the register's office for the county or counties in which the land lies during the full term of said seven (7) years' adverse possession."

When the requirements of this statute are met, title is transferred by operation of the statute from the holder of the legal title to the adverse claimant. The statute takes the place of a formal conveyance of the land such as a grant or a deed. This statute bars the right. Furthermore, no legal title can be acquired under this statute unless the claimant is holding adversely under recorded assurance of title purporting to convey an estate in fee for seven years.

T. C. A. sec. 28-202 provides:

"On the other hand, any person, and those claiming under him, neglecting for the said term of seven (7) years to avail themselves of the benefit of any title, legal or equitable, by action at law or in equity, effectually prosecuted against the person in possession, under recorded assurance of title, as in sec. 28-201, are forever barred."

T. C. A. sec. 28-202 contemplates a contest by the holder of the legal title out of possession against a claimant in adverse possession under registered assurance of title. This is a defensive statute which declares the holder of the legal title out of possession must bring his suit against the adverse claimant in possession under a registered assurance of title within seven years or be forever barred. This statute bars the remedy.

T. C. A. sec. 28-203 provides:

"No person or anyone claiming under him shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued; provided, however, that no possession of

lands, tenements or hereditaments shall be deemed to extend beyond the actual possession of an adverse holder until the muniment of title, if any, under which such adverse holder claims such lands, tenements or hereditaments is duly recorded in the county in which the lands are located."

This statute falls into two parts. Down to the semi-colon,. the statute stood for many years without more. Under this first part of the statute, the courts held that a defendant in adverse possession under any muniment of title, such as parol sale or unrecorded deed, could hold to the extent of his boundaries set forth in his muniment of title against an attack by the holder of the legal title out of possession, even though the adverse possessor had actual possession to only part of the land covered by his muniment of title. 1932 Code of Tennessee Section 8584; Kittel v. Steger, 121 Tenn. 400, 117 S. W. 500.

The latter part of T. C. A. sec. 28-203, from the semi-colon to the end, came into the code by the 1950 amendment to the Code of 1932. Since the effective date of this amendment an adverse holder could only defeat the suit of the holder of the legal title to the extent of the actual possession of the adverse holder and not to the extent of the boundaries set forth in the muniment of title under which the adverse holder claimed the right to possession when the adverse holder had actual possession of only a part of the land covered by his muniment of title, when the muniment of title of the adverse holder was "duly recorded in the county in which the lands are located." The plain language of the 1950 Amendment requires the construction we have given the statute.

T. C. A. sec. 28-203 is a defensive statute and protects the adverse holder in possession to the extent and upon the terms set forth in the statute.

T. C. A. sec. 28-205 provides:

"Any person holding any real estate or land of any kind or any legal or equitable interest therein, and such person and those through whom he claims having been in adverse possession of same for seven (7) years, where said real estate is held and claimed by him or those through whom he claims by a conveyance, devise, grant, a decree of a court of record, or other assurance of title purporting to convey an estate in fee, and such conveyance, devise, grant, or other assurance of title, has been recorded in the register's office of the county in which the land lies for a period of thirty (30) years or more or such decree entered on the minutes of such court for a period of thirty (30) years or more, is vested with an absolute and indefeasible title to such real estate or interest therein."

T. C. A. sec. 28-205 confers a right and operates to vest in the adverse holder under color of title a legal title to land adversely held for seven years, provided the color of title had been recorded in the county where the land lies for a period of thirty years; or the decree of a court under which the adverse holder claims title had been entered on the minutes of the court for a period of thirty years.

T. C. A. sec. 28-205 differs from T. C. A. sec. 28-201 in this respect: T. C. A. sec. 28-201 deals with land granted by the state and requires only seven years' adverse

possession of the land under recorded assurance of title of such land to perfect legal title in the adverse holder to the extent of the boundaries set forth in the color of title under which the land is held, even though the possession is located only on a part of the land included in the boundaries of the adverse holder's assurance of title.

T. C. A. sec. 28-205 does not require proof that the land is granted land, but does require thirty years' registered color of title and seven years' adverse possession under registered color of title. The thirty years registration carries the presumption that the land was granted by the state.

Briefly summarized, T. C. A. sec. 28-201 and T. C. A. sec. 28-205 deal with the right and convey title to the adverse holder; and T. C. A. sec. 28-202 and T. C. A. sec. 28-203 deal with defensive rights and the possessions under these latter two statutes can be used by the adverse holder defensively only.

Under the common law in this state, legal title to land may be acquired by prescription; that is twenty years' actual adverse possession with or without color of title. Walsh v. Rose, 29 Tenn. App. 78, 193 S. W. 2d 118.

Where a party claims title to land by twenty years' adverse possession supported by a recorded muniment of title, claimant's title to the land is limited to the land actually held in adverse possession and does not include the land to the extent of the claimed boundaries which lies beyond the land actually held in adverse possession. Keel v. Sutton, 142 Tenn. 341, 219 S. W. 351; Scruggs v. Baugh, 3 Tenn. App. 256.

The foregoing rules have been considered in detail so we could correctly construe the plea of defendants relating to adverse possession.

After copying the descriptions to the twelve tracts of land, which defendants claim in their answer; defendants then plead:

"That these respondents, and those through whom they claim title to the foregoing twelve described tracts of land, have been in the open, notorious, adverse, exclusive and peaceable possession of said tracts of land, for more than seven years, and more than twenty years, and they, therefore, plead and rely upon the Statutes of Limitation of Seven, and Twenty years, as a complete bar to complainants' suit."

Where a claim of adverse possession is interposed as merely a defense; that is, only a possessory right unaided by title or color of title, the statute must be specifically pleaded to be available. Peoples v. Hagaman, 31 Tenn. App. 398, 215 S. W. 2d 827.

Giving the foregoing plea of defendants, incorporated in their answer, a construction most favorable to defendants who filed it, we hold the plea sufficiently sets up a defense in so far as it relies upon the seven years' adverse possession under T. C. A. sec. 28-203. In so far as the plea relies on twenty years' adverse possession, it is sufficient as a plea of the twenty years' statute of limitations involving a legal title by prescription. There is no stautory limitation of actions of twenty years in this State.

■ There is no proof in the record to support actual possession of any tract of land described in the answer to the extent of definitely described boundaries. Wherefore, defendants have only one statute of limitations upon which to rely: T. C. A. sec. 28-203.

■ We have found some confusion in the supplemental bill. In this supplemental bill complainants expressly excluded from the land sued for the 50 acres surface rights in the deed from Barrell to B. H. Wooten; the 50 acres surface rights in the deed from Barrell to Matthew Trussell; also Entry No. 630; and Grant No. 8867 to John W. Wooten. Now the proof shows without conflict that Grant No. 8867 was not based on Entry No. 630. Grant No. 8867 shows on its face that it is based on Entry No. 1281. Furthermore, as stated, for some reason the State issued to John W. Wooten Grant No. 12,559 which shows on its face that it, too, was based on Entry No. 1281.

The proof shows that the only grant that was based on Entry No. 630 was Grant No. 14,529 to John W. Wooten for 100 acres. Wherefore, giving complainants the benefit of this somewhat confused state of the pleadings, we hold: complainants excluded from their bill the following tracts of land: (1) the surface rights in the deed from Barrell to Matthew Trussell of 50 acres; (2) the surface rights in the deed from Barrell to B. H. Wooten of 50 acres; (3) the John W. Wooten Grant No. 8867 based upon Entry No. 1281 of 100 acres, referred to in part of the record as the John W. Wooten Grant No. 12,559 based on Grant No. 1281 of 100 acres; and (4) Grant No. 14,529 based on Entry No. 630 of 100 acres

lying southwest of John W. Wooten Grant No. 8867 (or 12,559).

Defendants did not prove any possession, whatever, on any of the land for which complainants sued. All possessions of defendants lie within the boundaries of the land specifically excepted from complainants' bill.

■ There is no merit in the contention of the defendants that the decree dismissing the bill as to W. F. Hargis Grant No. 13,464 of 772 acres was a final decree and the supplemental bill could not be filed to bring this tract of land back into the suit. The Chancellor ruled against defendants on this contention; and the Chancellor was right on this issue. As we view the case the assignment of defendants that the Chancellor erred in refusing to sustain their exceptions to the depositions of certain witnesses has no merit. The reasons assigned by defendants for the exclusion of these depositions in no way influenced our decision.

Let the assignments filed in behalf of the complainants be sustained. The assignments filed in behalf of defendants are overruled.

Tax defendants with all the costs of the cause, and remand the cause to the Chancery Court of Marion County for such further proceedings as may be proper under the direction and control of the Chancellor and consistent with this opinion.

Felts and Shriver, JJ., concur.