Walter TEEPLES and wife Fayne Teeples, Plaintiffs-Appellees,

v.

James F. KEY and Silvia Key Ridge, Defendants-Appellants.

Court of Appeals of Tennessee, Middle Section.

Feb. 23, 1973.

Rehearing Denied March 30, 1973.

Certiorari Denied by Supreme Court Oct. 15, 1973.

Reneau & Reneau, Celina, for plaintiffs-appellees.

Rollie L. Woodall and Robert E. L. Sutton, Nashville, for defendants-appellants.

## OPINION

PURYEAR, Judge.

This case involves an unfortunate dispute among members of a family over a tract or parcel of land on Pea Ridge in the Third Civil District of Clay County, Tennessee, consisting of twelve acres more or less.

The land in controversy here is part of an original tract of forty-five acres, more or less, which forty-five acre tract was conveyed by J. H. Reneau, Jr., Clerk of the County Court of Clay County, Tennessee, to Mrs. Beatrice Key on July 19, 1943, by deed of record in Deed Book 5, page 414 in the Register's Office of Clay County.

At the time Mrs. Beatrice Key purchased this property she was married to James A. Key and they had four children, of whom three were, Fayne Key Teeples, one of the plaintiffs herein, and Jimmy F. Key and Silvia Key Ridge, the defendants herein.

From November, 1945, until the date of his death, in 1969, James A. Key was in very poor health and unable to work.

In 1945, the owner of said land, Mrs. Beatrice Key, went to Indiana, where she obtained employment and continued to reside until James A. Key died on November 13, 1969. Mrs. Key obtained a divorce from Mr. Key in the State of Indiana in 1952 and subsequently married one Albert Duke. James A. Key continued to reside on the tract of land in question until the date of his death.

On the 24th day of December, 1956, Mrs. Duke, formerly Beatrice Key, conveyed the twelve acre tract in controversy here to the plaintiffs, Walter Teeples and wife, Fayne Teeples.

Also by deed dated January 31, 1959, the twelve acre tract was again conveyed by Mrs. Duke and her husband, Albert Duke, to the plaintiffs.

The two aforementioned deeds were acknowledged in Kentucky and both of them contain acknowledgments which do not comply with the laws of Tennessee.

Then on October 9, 1961, Mrs. Duke executed another deed conveying the same twelve acres in controversy here to the plaintiffs. This latter mentioned deed was duly acknowledged before a notary public in Clay County, Tennessee, and was recorded on October 9, 1961, in the Register's Office of Clay County.

Mrs. Teeples testified that this latter mentioned deed was executed for the purpose of correcting the defect which occurred by reason of acknowledgments on the two preceding deeds acknowledged in Kentucky.

On the 16th day of August, 1960, James A. Key executed a deed conveying the twelve acre tract of land in controversy here to the defendants, Jimmy F. Key and Silvia Key Ridge, reserving therein for himself a life estate in said land. This deed was duly recorded in the Register's Office of Clay County on August 18, 1960.

On the 2nd day of February, 1961, the plaintiffs, Teeples and wife, filed a bill in the Chancery Court of Clay County, Tennessee, against the said James A. Key and one Charley Daniel, in which they alleged they were owners of a forty-five acre tract of land in the Third Civil District of Clay County, which includes the twelve acre tract in controversy here.

In that bill of complaint, the Teeples also alleged that James A. Key and the said Charley Daniel had been cutting timber on said land and otherwise committing waste thereon, praying in said bill that a writ of injunction issue restraining the cutting or removing of timber therefrom or committing waste upon said land and for general relief.

James A. Key filed an answer to said bill, in which answer he denied that the Teeples had any right, title or claim to said land, averred that he was claiming it as his own and had possession thereof; that he had held the exclusive, actual, visible, open, notorious and adverse possession of said land for more than seven years before the filing of said bill.

After introducing a part of their proof in that case, the Teeples voluntarily dismissed said bill and it was ordered by the Court that the sum of $60.00 which had theretofore been deposited in Court for certain timber cut from the land be paid to the said James A. Key after deducting a ten percent commission for the receiver appointed in said cause.

James A. Key died on November 13, 1969, and shortly thereafter Jimmy F. Key and Silvia Key Ridge rented a house on said land to two successive tenants.

On June 11, 1970, Mrs. Duke, formerly Mrs. Beatrice Key, died. At some time after Mr. Key died and before Mrs. Duke died, the Teeples, on the one hand, and Jimmy F. Key and Silvia Key Ridge, on the other, began to assert conflicting claims to the land. The Teeples placed a mobile home thereon and shortly thereaf-

ter, Jimmy F. Key and Silvia Key Ridge also placed a mobile home thereon. The Teeples then removed the mobile home placed thereon by Jimmy F. Key and Silvia Key Ridge, whereupon Jimmy F. Key placed the mobile home back on the premises and removed a pump from a well which was supplying water to the mobile home of the Teeples.

This tug of war between the parties continued up until the Teeples filed their complaint in the instant suit on July 6, 1971, and this was the first suit filed after the injunction suit filed against James A. Key was voluntarily dismissed on October 9, 1961.

In their complaint the plaintiffs, Teeples, aver that they are the lawful owners of said land, having acquired title thereto from Mrs. Teeples' mother, Mrs. Beatrice Duke.

In said complaint they further aver that the defendant, Jimmy F. Key, has wilfully, deliberately and unlawfully committed acts of trespass on said land and stated his intention of continuing to do so.

Plaintiffs prayed for a restraining order, recovery of damages and further prayed that the purported deed from James A. Key to the defendants be declared null and void as a cloud upon the plaintiffs' title and that the same be cancelled and that the defendants be enjoined from asserting or attempting to assert any right, title or interest in said land by virtue of their deed.

The defendants filed an answer to said complaint denying that the plaintiffs are the owners of said land but averring, that on the contrary, defendants are the owners thereof and expressly relying upon the seven year statute of limitations (T.C.A. § 28–203) as a bar to said action.

In addition to said answer, the defendants also filed a cross-complaint averring that they are the owners of said land by virtue of the seven year statute of limitations and also averring that they and the said James A. Key, under whom they

claim, had the open, notorious, and adverse possession of same for a period of over twenty years.

In said cross-complaint, the defendants pray that they be awarded judgment against the plaintiffs for $2,000.00 damages, that the plaintiffs be restrained from trespassing upon the land, that the purported deeds to them from Beatrice Duke be declared null and void and cancelled.

The case was tried before the Chancellor upon oral testimony and documentary evidence on the 16th day of August, 1971, as a result of which trial the Chancellor found the issues in favor of plaintiffs, sustained their complaint and dismissed the cross-complaint.

Also in said decree the Chancellor ordered a reference to the Clerk and Master to take proof and report the amount of damages inflicted upon the premises by the defendants. From said decree the defendants have prayed and perfected an appeal to this Court and filed four assignments of error as follows:

I

"The Chancellor erred in failing to dismiss the complaint as barred by the expiration of the seven (7) year period of limitations established by Tennessee Code Annotated, Section 28–203.

II

The Chancellor erred in failing to eject the plaintiffs and to uphold the fee simple title to the land obtained by the defendants through common law prescription.

III

The Chancellor erred in failing to decree that the several deeds to the land made to the plaintiffs by Beatrice Key Duke were void as champertous and in failing to remove the cloud upon the defendants' title created by the deeds.

### IV

The Chancellor erred in finding that the possession of James A. Key was permissive and not adverse and in basing this finding on the lay opinion of residents of the area."

In response to the first assignment counsel for plaintiffs argues that James A. Key remained in possession of the land by their permission from 1956 until the date of his death. However, this is not supported by the evidence, but on the contrary, the evidence preponderates against this theory.

During the period from 1961 through 1970, inclusive, claimants on both sides of the controversy paid taxes on the land and it is quite possible that for all of these years, except 1961 and 1962, the taxes were paid twice for each year. Consequently none of the parties gained any advantage over the others by the payment of taxes.

■ Regardless of whether James A. Key was in possession of said land by permission of his former wife and the plaintiffs herein after his former wife moved to Indiana and up until the plaintiffs filed suit against him on February 2, 1961, he held possession thereof adversely to plaintiffs and adversely to his former wife from the date that suit was dismissed on October 9, 1961, until his death in 1969.

By his answer filed in that suit, he put the plaintiffs on notice that he was claiming title to said land and holding possession thereof adversely, openly, notoriously and exclusively and if plaintiffs desired to dispossess him it was their duty to file another suit against him within seven years after the first suit was dismissed on October 9, 1961. Having failed to do so within that period of time, they are barred by the provisions of T.C.A. Section 28–203, which is as follows:

"28–203. *Period after accrual of right within which action brought.*—No person or anyone claiming under him shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued; provided, however, that no possession of lands, tenements or hereditaments shall be deemed to extend beyond the actual possession of an adverse holder until the muniment of title, if any, under which such adverse holder claims such lands, tenements or hereditaments is duly recorded in the county in which the lands are located."

James A. Key's adverse possession of said land inures to the benefit of defendants by virtue of the deed which he executed and delivered to them and which has been recorded in the Register's Office of Clay County, Tennessee, for more than seven years before this suit was filed.

■ Although separate successive disseizins do not aid one another in the absence of privity between the successive disseizors it has been held that successive possessions, if consistent and under the same title, may be connected so as to make out the time to create the bar of T.C.A. § 28–203. Woodruff v. Roysden (1900), 105 Tenn. 491, 58 S.W. 1066; Northcut et al. v. Church et al. (1915), 135 Tenn. 541, 188 S.W. 220; Baker v. Hale (1873), 65 Tenn. 46.

In fact, however, the plaintiffs' suit was barred before James A. Key died and defendants succeeded him in possession and we cite the above cases only to show that his adverse possession of the land inured to the defendants' benefit since his possession thereof was consistent with their claim of title and they are now in possession by virtue of their contractual privity with him.

■ Although adverse possession under T.C.A. § 28–203 does not have the effect of vesting an indefeasible title in the adverse holder it can be used defensively by such adverse holder against one who brings an action to dispossess him. Moore v. Brannan (1957), 42 Tenn.App. 542, 304

S.W.2d 660; Savely v. Bridges (1967), 57 Tenn.App. 372, 418 S.W.2d 472.

Therefore, we hold the plaintiffs' suit is barred by the provisions of T.C.A. § 28-203 and the first assignment of error is sustained.

The second and fourth assignments present interrelated questions and therefore, we will discuss and consider them together. In support of these two assignments, defendants insist that they, and the said James A. Key, through whom they claim title, held said land adversely, exclusively, openly and notoriously, under a claim of right for the common law prescriptive period of twenty years. However, we have concluded that the evidence preponderates against this theory.

There is evidence in the record to the effect that soon after his former wife purchased the land in 1943, the said James A. Key complained because his name was not included as a grantee in the deed thereto from the County Court Clerk of Clay County, but we are of the opinion that the evidence preponderates in favor of plaintiffs' theory that from 1943 until the divorce was granted in 1952, Mr. Key occupied the land in question by permission of his wife, as held by the Chancellor.

There is evidence in the case to the effect that after the wife left Tennessee and went to Indiana for the purpose of obtaining employment, she returned to her former home on said land and visited for extended periods of time until she obtained a divorce in 1952, and assisted Mrs. Teeples, who was living in the home with her father, with some of the household tasks and took some interest in helping to provide for the family.

It also appears from the evidence that, from 1945 until 1954, Mrs. Teeples lived in the home with her father and helped take care of him, so all of this tends to refute the theory that Mr. Key's possession was exclusive during that period of time, but rather tends to show that the property was used as a home for the family by common consent.

■ Therefore, from the evidence, we have concluded that James A. Key's adverse, exclusive, open, and notorious possession of said land could not have begun prior to 1954 at which time Mrs. Teeples married and moved to Detroit, Michigan.

Even if it should be assumed, for the sake of argument, that James A. Key constantly insisted that his name should have been included as a grantee in the deed from the County Court Clerk, then it naturally follows that if he had prevailed in this insistence, the land would have been conveyed to himself and his former wife as tenants by the entireties or as tenants in common, and in either event, he would have been a tenant in common with her from the time the divorce was granted in 1952.

■ Generally speaking, where a husband and wife hold realty as tenants by the entireties during the marriage and as equal tenants in common after divorce, the husband's uninterrupted possession of said realty for twenty years after the wife deserts him does not amount to an ouster of her as a tenant in common so as to vest in him the title to said land by prescription. Hampton v. Manuel (1965), 56 Tenn.App. 95, 405 S.W.2d 47.

■ The burden of proving title by adverse possession for the prescriptive period of twenty years is upon the defendants and, after a consideration of all of the evidence in this case, we are convinced that they have not successfully carried this burden.

Therefore, the second and fourth assignments are respectfully overruled.

Since we have concluded that the defendants do not have an indefeasible fee simple title to said land but only a defensive possessory right thereto, it is unnecessary and, perhaps, inappropriate for us to consider the third assignment to the effect

that the Chancellor erred by failing to decree that the deeds made by Mrs. Duke to plaintiffs were void as champertous and in failing to remove same as a cloud upon the title to said land.

Therefore, the third assignment is pretermitted.

From the conclusions which we have reached and set forth herein, it necessarily follows that the decree of the Chancellor is reversed and set aside and a decree will be entered here dismissing the plaintiffs' original complaint and sustaining the cross-complaint only to the extent of restraining the plaintiffs from trespassing upon said land or otherwise interfering with the defendants' right of possession thereto. In all other respects, the cross-complaint will be dismissed.

The costs of the case, including this appeal, will be borne equally by the parties, that is, the plaintiffs will pay one-half thereof and defendants will pay the remaining one-half thereof.

The case will be remanded to the trial Court for the purpose of enforcing said decree which is to be entered herein.

SHRIVER, P. J., and TODD, J., concur.

## OPINION ON PETITION TO REHEAR

PURYEAR, Judge.

A petition to rehear has been filed by the plaintiffs-appellees, the principal thrust of which is to the effect that the Court has failed to take into consideration the latter portion of T.C.A. § 28–203 and therefore, erroneously held that the defendants' defensive possessory right does not extend beyond that portion of the property of which they hold actual possession, citing Moore v. Brannan (1957), 42 Tenn.App. 542, 304 S.W.2d 660.

However, we do not think Moore v. Brannan, supra, so holds but, be that as it may, as we pointed out in our original opinion, defendants' predecessor in title, James A. Key, held possession of the entire tract of land adversely for more than seven whole years prior to the date of his death and therefore, his adverse possession of same inured to the benefit of defendants by virtue of the deed which he executed and delivered to them and which had been duly recorded in the Register's Office of Clay County, Tennessee, since August 18, 1960.

Also, as we pointed out in our original opinion although separate successive disseizins do not aid one another in the absence of privity between the successive disseizors it has been held that successive possessions, if consistent and under the same title, may be connected so as to make out the time to create the bar of T.C.A. § 28–203. Woodruff v. Roysden (1900), 105 Tenn. 491, 58 S.W. 1066; Northcut et al. v. Church et al. (1915), 135 Tenn. 541, 188 S.W. 220; Baker v. Hale (1873), 65 Tenn. 46, all supra.

Therefore, we find no merit in the petition to rehear and it is respectfully denied.

SHRIVER, P. J., and TODD, J., concur.