| Lionel L. Lulow and wife, Nancy | ) | Appeal No. |
| Lulow, | ) | 01-A-01-9509-CH-00399 |
| Plaintiffs/Appellees, | ) | |
| v. | ) | Civil Action No. |
| Earl Poss and Carl Poss, | ) | 90-78 |
| Defendants/Appellants. | ) | |

FILED

July 1, 1998

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CANNON COUNTY CHANCERY COURT

AT WOODBURY, TENNESSEE

THE HONORABLE ROBERT E. CORLEW, CHANCELLOR

FRANK BUCK
LENA ANN BUCK
124 West Main Street
Smithville, Tennessee 37166
ATTORNEYS FOR THE PLAINTIFFS/APPELLEES

A. VESTER PARSLEY, JR.
111 West Main Street
Smithville, Tennessee 37166
ATTORNEY FOR THE DEFENDANTS/APPELLANTS

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED

WALTER W. BUSSART, JUDGE

## Opinion

This is an appeal by defendants/appellants, Earl and Carl Poss, from a decision of the chancery court in a boundary dispute. It is the Posses contention that the chancery court erred when it approved the survey entered into evidence by the plaintiffs/appellees, Lionel and Nancy Lulow. The diagram below, while not drawn to scale, depicts the layout of the relevant tracts of land.[1] Reference to this diagram will be helpful in understanding the following facts.

On July 7, 1978, Glenn, Eleanor, M. Russell, and Ruth Devore ("the Devores") conveyed by warranty deed a 32.5 acre tract to the Lulows. The deed stated:

> Bounded on the North by a 56 acre tract previously conveyed to Lulow; bounded on the East by Mann; bounded on the South by Strange; and on the West by other lands of Devore, and containing 32.5 acres, more or less . . . .

> It is expressly understood and agreed, and made a part of the consideration hereof, that the grantees herein, their heirs and assigns, are hereby granted a 30-foot right-of-way to the northeast and west boundaries along existing farm roads for ingress and egress to the property herein conveyed.

> It is further expressly understood and agreed, and made a part of the consideration hereof, that the grantees herein, their heirs, and assigns, are hereby granted a 40 foot right-of-way which has been previously dedicated in a deed from Devore to George Reynolds [Harrison] for the purpose of allowing the grantees herein and their heirs and assigns, ingress and egress to the property herein conveyed.

On February 20, 1979, the Devores conveyed by warranty deed an 88.6 acre tract to John and Barbara Howard. The Howard deed described the eastern and southern boundaries as follows: "thence southwesterly along the center of said Right-Of-Way Road, to a point marked by a steel pin located 15 ft. west of the center of said Road; thence in a northwardly direction with the lands of Devore to a corner in Floyd Vache line." Earl Walls conveyed twenty acres to Ted Self on October 2, 1989. Self's deed described his southern and eastern boundary as follows: "bounded on the South by the lands of George W. Reynolds and Cheryl Harrison; bounded on the East by the lands of Devore and Toler." Finally, on September 2, 1990, the Devores conveyed by quitclaim deed a parcel of land to the Posses. A portion of this land is the subject of this appeal. The Posses' deed stated:

> Beginning on a steel pin in the East margin of the Melton Hollow Road, this also being the Self Southwest corner; running thence about East approximately 1800 feet with the Self line to the Howard line; thence about East and/or Southeast approximately 1000 feet with the Howard line to the center of a farm road to the intersection with another farm road, this also being the Howard Southeast corner in the Lulow line; thence about South and East approximately 1000 feet with Lulow and with the meanders f the center of a farm road to the intersection with another farm road, this also being the Lulow Southern corner in the Strange line; thence continuing about South approximately 120 feet with Strange and the center of the Road to the intersection of the farm road to the intersection of the farm road with a County road, this also being the Broach Western corner in the Strange line; thence about Northwest

---

[1] This diagram was constructed using three surveys found in the record. Exhibit 18 is a plat by Larry Knott, the Lulows' surveyor, and Exhibits 12 and 21 are plats by Richard Puckett and Sam Denny, the Posses' surveyors. The area labeled as "DEVORE AND OTHER LANDOWNERS" is labeled as such because there is evidence that other landowners own property in this area.

2

and West approximately 3500 feet with the meanders of the a County Road and the Broach line to the East margin of the Melton Hollow Road; and, thence about North approximately 120 feet with the Melton Hollow Road to the point of beginning, containing 16 acres, more or less, by estimation. . . . It is agreed and understood that this is a conveyance by the tract, and in no sense shall it be construed as a conveyance by the acre.

It is expressly agreed and understood, and made a part of the consideration hereof, that the grantees herein, their heirs and assigns, are hereby granted a 30 foot right-of-way to the Eastern boundary of the property herein along an existing farm road connecting with the aforementioned County Road, which has been previously dedicated in a Deed from Devore to Lionel and Nancy Lulow, connecting with the aforementioned County Road for the purposes of ingress and egress to the property herein conveyed.[2]

The Lulows filed a complaint on October 27, 1990. They claimed they owned land west of the Troublesome Ridge Road and asked the court to resolve the boundary dispute between them and the Posses. The Lulows also alleged the Posses had caused damages to the disputed property and to property clearly belonging to the Lulows. The Lulows, therefore, requested a temporary injunction enjoining the Posses from causing any further damage. The trial court ordered that a mutual temporary injunction issue. The Posses filed an answer. They denied all the material allegations of the complaint and stated a counterclaim. The Posses alleged the Lulows had blocked access to the Troublesome Ridge Road.

Jim and Judy King filed a motion to intervene as defendants in order to gain rights of ingress and egress over the Troublesome Ridge Road. The Kings were involved in a separate property dispute with the Mingles concerning the ownership of the property requiring access.[3]

The court filed an order on February 14, 1991 allowing the Posses to use the Troublesome Ridge Road pending further orders of the court. Two months later, the court filed an opinion and determined the lay of the land entitled the Kings to an easement by necessity. The court did not determine ownership of the disputed area or the compensation to the Lulows from the Kings at that time.

Richard and Phyllis Jones filed a motion to intervene on May 9, 1991. They claimed the Kings by ruling of the court had taken a portion of the their property, i.e., that portion of the easement running through their property, and that they were entitled to compensation from the Kings for such taking. The Lulows filed a motion to amend their answer to the counter-complaint to include the defense of champtery.

---

[2] During the trial of this case, the Devores and Possess executed and had recorded a Deed of Correction. The only difference between the original and correction deed was the description in the correction deed was a meets and bounds description based on Puckett and Denny's survey.

[3] It appear from the record the Kings and the Mingles own land north of that depicted in the diagram.

On September 11, 1991, the court determined the controversy between the Joneses and the Kings was too remote. As a result, the court overruled the Joneses motion and dissolved the temporary restraining order. The court filed an order on November 13, 1991 allowing the Devores to intervene as plaintiffs. The court also granted the Kings' motion to intervene.

The court filed an opinion on February 7, 1992 and determined the land claimed by the Lulows was rightfully theirs and the boundary lines should be established in accordance with the survey prepared by the Lulows' surveyor, John Knotts. The court found the issue of champerty was not established. Finally, the court determined it should appoint a jury of view pursuant to Tennessee Code Annotated title 54, chapter 14 to determine the location of the easement by necessity, if different than the determination of the court, and to determine damages.

The Posses filed a motion pursuant to Rule 52.01 of the Tennessee Rules of Civil Procedure. The Posses also claimed the Lulows waived their right to a jury of view. The Posses and the Kings filed a motion alleging the Lulows had violated the court's orders of February 14, 1991 and April 9, 1991. The Posses and the Kings requested the court punish the Lulows for contempt of court and issue a restraining order. The Lulows filed a counter-motion for contempt.

The Posses and the Kings filed a motion for a new trial on December 4, 1992. The parties claimed the evidence preponderated against the court's ruling and the trial court failed to properly treat the easement issue as an action in rem. The trial court filed an order in which the court: 1) restated its conclusions as to the boundary dispute; 2) specifically stated the Posses had no interest in the disputed property and divested them of any interest; 3) found there was no proof sustaining the champerty allegations; 4) held the Kings were entitled to an easement by necessity to be used once per week; 5) found the Lulows were entitled to a jury of view to determine compensation as the parties agreed the Troublesome Ridge Road was the most reasonable easement; and 6) ordered that the findings of fact and conclusions of law filed by the Lulows on July 30, 1992 be made the findings and conclusions of the court. The court filed a second order dismissing both contempt motions, restraining the Posses from coming upon the property awarded to the Lulows, allowed the Kings to continue using the easement once a week, and restrained the parties from carrying weapons onto the easement.

On December 8, 1994, the Lulows filed a motion to dissolve the easement previously granted the Kings. The Lulows alleged a ruling in a separate case involving the Kings had established the boundary lines in a way which destroyed the need for the easement. The court filed an order on May 25, 1995. The court overruled the motion for a new trial and removed any rights obtained by the Kings from previous orders of the court. The order also stated that a letter written by Chancellor Corlew, dated April 17, 1995 setting out the court's findings, would be made part of the record.

4

The Kings filed a "motion for written findings of facts and adjudication of all parties and issues." The court filed an order finding that the Chancellor's letter and Appellee's counsel's statement of the facts sufficiently satisfied the provisions of Rule 52 and overruled the motion for further written findings. The court also ordered the clerk to mail copies of the Final Judgment to all parties who were not previously served.

The Posses and the Kings[4] filed a notice of appeal as to the court's May 25, 1995 order. The Kings filed a letter with the court suggesting the court was confused and mistaken. The Devores filed a notice of voluntary dismissal, and the court filed an order allowing the Devores to take a voluntary nonsuit.

Despite the complex history of this case, there is only one issue presented for our determination, that is, whether the Lulows have any claim to land west of the Troublesome Ridge Road. The difficulty of determining this issue, however, is exacerbated by a deficient record. The parties have attempted to reconstitute the record, but four exhibits are still missing.

The trial court found:

> [B]ased upon the evidence presented in this extremely lengthy trial, the plaintiff's have shown by the preponderance of the evidence they are the owners of the portion of land surveyed by Larry Knott, and shown in Exhibit 18 of this trial. The evidence clearly establishes the plaintiffs began making open, notorious, continuous, actual and visible use of the subject property. Further, the proof clearly establishes this use has continued since their purchase in June, 1978 until September, 1990 when the defendants purchased the property by a quitclaim deed.
> . . . .
> For the above reasons, it is the opinion of the court the plaintiffs have clearly established they are the owners of the disputed area, which was set out in the plat labeled Exhibit 18 of the survey of Larry Knott.

It is the opinion of this court that the trial court correctly concluded that the evidence preponderated in favor of a finding that the Lulows adversely possessed land west of the Troublesome Ridge Road from June 1978 until September 1990. Other questions, however, must be answered before the property of the chancellor's final judgment can be determined. The first is the effect of the possession, and the second is the extent of the land acquired through such possession.

A legal or equitable title holder may not challenge the title of a party who has adversely possessed land for seven years under a recorded assurance of title without challenge from the legal or equitable title holder. Tenn. Code Ann. § 28-2-102 (19__). Moreover, any party claiming under the legal or equitable title holder is barred as well. In this case, the Lulows adversely possessed land for more than seven years beginning in June 1978. The Devores never challenge the Lulows' title.

---

[4] The Kings did not file a brief in this case.

Finally, the Lulows had a recorded assurance of title in the form of their deed from the Devores.[5] Thus, the Devores and those claiming under them, the Posses, are forever barred from asserting title to the land adversely held. *See Moore v. Brannan*, 42 Tenn. App. 542, 561, 304 S.W.2d 660, 669 (1957).

We now turn to the amount of land acquired by the Lulows as a result of their adverse possession. the various deeds and testimony in this trial reveal the Lulows owned land west of the Troublesome Ridge Road, but not all of the land included in the survey of Larry Knott.

In order to determine the amount of land acquired by the Lulows through adverse possession we must examine the language of the Lulows' recorded assurance of title, i.e., their deed from the Devores. Specifically, we must determine the location of the Lulows' western boundary. The Lulows' deed describes the Lulows' property as being bounded on the West by "other lands of Devore," not by the troublesome Ridge Road. This language alone is of little value, however, as the Devores owned land to the East and West of the Troublesome Ridge Road. Given this, the Lulows' Western boundary could have lied anywhere West of the Troublesome Ridge Road as long as the line still bordered the Devores' property. The only other evidence in the deed of the Lulows' Western boundary is the call which reads "32.5 acres more or less." This along with the description of the Western boundary is evidence the Lulows' deed included land West of the Troublesome Ridge Road.

The Posses argued one could not read the Lulows' deed so broadly as to include land west of the Troublesome Ridge Road. The Possess argued the description of the Lulows' northern, eastern, and southern boundaries limited the Lulows' western boundary to the Troublesome Ridge Road. Specifically, they argued that if the Lulows' land extended west of the Troublesome Ridge Road, the Lulows' deed would have called for other lands of Devore on the northern boundary and Harrison on the southern boundary. Second, the Posses point out that the Devores would not have granted the Lulows the thirty foot right of way if they had conveyed land west of the Troublesome Ridge Road to the Lulows. Finally, the Posses argued Howard's and Self's deeds referred to the land of Devore as their southern and eastern boundaries respectively. The Posses contented these deeds would have referenced the Lulows' land had the Lulows owned land west of the Troublesome Ridge Road.

It is the opinion of this court that the chancellor's final judgment decision would result in a windfall to the Lulows' as it would grant them far more than the 32.5 acres they bargained for. Thus, it is the opinion of this court that this case should be remanded to the chancery court to draw a line

_____

[5] The extent of the land covered will be discussed later in this opinion. For the purposes of this portion of the discussion, the court is assuming the Lulows' deed includes a portion of land west of the Troublesome Ridge Road.

granting the Lulows approximately ten acres west of the Troublesome Ridge Road.

Therefore, the decision of the chancery court is affirmed in part and reversed in part. The case is remanded to the chancery court for the entry of an order granting the Lulows approximately ten acres west of the Troublesome Ridge Road. Cost on appeal are taxed equally against plaintiffs/appellees, Lionel and Nancy Lulow, and defendants/appellants, Earl and Carl Poss.

_____
WALTER W. BUSSART, JUDGE

CONCUR:

_____
HENRY F. TODD, Presiding Judge

_____
WILLIAM C. KOCH, JR., Judge