

# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 21, 2016 Session

## DONNA BABB FRINKS v. PATRICIA EILEEN HORVATH ET AL.

**Appeal from the Chancery Court for Jefferson County**
**No. 12-CV-237      Douglas T. Jenkins, Chancellor[1]**

_____

### No. E2016-00944-COA-R3-CV

_____

This case involves alleged trespass via placement of a dock over lakefront real property that is beneath the lake's fluctuating water line several months of the year. Prior to congressional approval of construction for Douglas Dam in 1942, the property at issue was part of a 488-acre farm owned by the plaintiff's mother. In 1942, the Tennessee Valley Authority ("TVA") acquired a flowage easement with the right to flood up to contour line 1007 adjacent to what is now Douglas Lake. TVA subsequently paid $35,628.50 to the plaintiff's mother to condemn the respective easement rights. In 1944, a third party purchased approximately 245 acres above contour line 1002, creating a subdivision in the 1950s with tracts of land adjacent to the lake. In 2006, the plaintiff learned that she had inherited from her mother title to real property below contour line 1002, located between "lakefront" tracts of land and the lake itself. Upon receipt of a November 2006 letter sent by the plaintiff's counsel to affected landowners, notifying them of the plaintiff's claim to the land upon or above which their docks were located, many of the landowners purportedly purchased title to the affected land from the plaintiff. However, the defendant landowner did not respond to the letter. On October 3, 2012, the plaintiff filed a complaint, alleging that the defendant was trespassing by virtue of a dock placed on property to which the plaintiff held title. The defendant had placed her dock immediately following the purchase of her tract in November 1992. The trial court subsequently consolidated this action with two similar lawsuits filed by the plaintiff against other landowners.[2] Following a bench trial, the trial court dismissed the complaint against this defendant upon finding that the defendant had established adverse possession of the property on which the defendant's dock sits when water levels are down and that the defendant's possession was continuous even when the dock was floating. The plaintiff timely appealed. Although we determine that the trial court erred in concluding that the defendant had established adverse possession for the twenty-year period required by common law, we further determine this error to be harmless because

_____

[1] Sitting by interchange.
[2] Neither of the other two lawsuits is at issue in this appeal.

the defendant successfully established the seven-year period required for the statutory affirmative defense provided by Tennessee Code Annotated § 28-2-103. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and RICHARD H. DINKINS, J., joined.

William S. Nunnally, Greeneville, Tennessee, for the appellant, Donna Babb Frinks.

Patricia Eileen Horvath, Dandridge, Tennessee, Pro Se.

**OPINION**

I. Factual and Procedural Background

The chain of title associated with the strip of lakefront real property at issue ("Disputed Property") is demonstrated by recorded deeds and testimony contained in the record and is not in dispute on appeal. The plaintiff's mother, Kathleen Babb, originally inherited a 488-acre farm located approximately at what is now Douglas Lake in Jefferson County, Tennessee, from her father, C.H. Cowan, who devised it to his daughter for life and then to her "bodily heirs."[3] C.H. Cowan died in 1929 when Kathleen Babb was eighteen years old. In 1942, when TVA obtained its flowage easement, Kathleen Babb was thirty-one years old. She had one child, Donna Babb, who was then five years of age and grew up to become the plaintiff, Donna Babb Frinks. Kathleen Babb subsequently died without any additional children. Prior to her death, Kathleen Babb retained ownership of the area below contour line 1002 of Douglas Lake, subject to TVA's flowage easement rights. In 1948, TVA paid $35,628.50 to condemn Kathleen Babb's easement rights. In 1944, Alfred Swann purchased the approximately 245 acres above contour line 1002 for a price of $5,000.[4] In the 1950s, Mr. Swann created a subdivision, now known as "Little Bonanza," with tracts of land adjacent to Douglas Lake.

---

[3] Mr. Cowan also devised a separate, nearby farm property to his son, Robert Cowan.

[4] In testimony and on appeal, Ms. Frinks has referred to Mr. Swann's acquisition of "240" acres; however, the 1944 deed granting him title reflects a property description of "245 acres, more or less," lying above contour line 1002. This distinction has no effect on Ms. Frinks's title at issue.

2

Ms. Frinks acknowledged at trial that prior to 2006, she did not realize that she still owned the Property below contour line 1002, some of which adjoins parcels in the Little Bonanza subdivision and some of which adjoins parcels north of the subdivision. She had resided in Florida all of her adult life except for some summer vacations spent in a cabin she owned with her husband at Coker Creek in Monroe County, Tennessee. Ms. Frinks testified that in 2006, she received a telephone call from an individual she did not know who stated that he and his wife owned property within the Little Bonanza subdivision and had been attempting to discern who owned title to the property below contour line 1002. According to Ms. Frinks, the individual advised her that "[s]omeone is selling your property." She stated that the caller and his wife had traveled "to the courthouse and gone back to all of the records and discovered all of this." Ms. Frinks testified that when she examined relevant courthouse records, she decided that she could not "turn [her] back" on the "legacy" of the Cowan farm that had been devised to her. She then retained counsel.

Ms. Frinks's counsel sent a letter, dated November 14, 2006, to all affected property owners, advising them that if they owned a dock over Ms. Frinks's property, they could qualify for a valid TVA permit for the dock by purchasing title to the affected property from Ms. Frinks. The letter stated in pertinent part:

Dear Property Owner:

This letter is being sent to you on behalf of Donna Babb Frinks because you have been identified as the owner of a lot or parcel of land on Douglas Lake which is either a lot in Little Bonanza Subdivision or a parcel to its north. You may own more than one lot. The purpose of this letter is to offer you an opportunity to purchase from Mrs. Frinks a portion of her property which lies between your tract and the water level of Douglas Lake, as it ebbs and flows.

Enclosed herein please find a copy of the relevant section of regulations relating to applications to place a dock on a reservoir maintained by the Tennessee Valley Authority. As you will see from the enclosure, TVA has the right to regulate the use of land and land rights subjacent to TVA reservoirs. If a facility is to be built on private land, the applicant must own the fee simple interest in the land or have a long term lease over the land in question. As you can see from the enclosed regulations, TVA recognizes that in some cases private property has been subdivided in a way that left an intervening strip of land between the upland boundary of the TVA flowage easement and the waters of the reservoir. The regulations provide that, in some situations, the owner of the

3

intervening strip cannot be identified or does not object to the construction of facilities over the landowner's property. In such circumstances, TVA may exercise its discretion to permit a facility if there is no objection from the fee owner of the intervening strip. However, the applicant (lot owner) is responsible for insuring that there is no objection from any owner of such land.

\* \* \*

Mrs. Frinks does object to the exercise of privileges over her property. However, she is willing to convey her interest to lakefront lot owners in order for the lot owners to solve their problems or potential problems with TVA.

\* \* \*

The purpose of this letter is to communicate an offer that would permanently resolve this issue for the lakefront owners. It is not in the nature of a demand that you do anything. You may not need or want a dock. If you agree that it would be in your best interest to acquire the ownership of the land between your lot or lots and the actual water level, this letter is for the purpose of advising you that you now have that opportunity. The price that Mrs. Frinks is placing upon her land to convey her rights to lot owners is based upon the amount of lake frontage for each parcel. The average parcel in Little Bonanza fronts on the lake by approximately one hundred (100) feet. Her minimum price for the land adjacent to a lot is the sum of $5,000.00. If, however, your lot contains more lakefront footage, the price would be higher. For example, if a property owner has three hundred (300) feet of lake frontage, the price would be $15,000.00. Her price is $50.00 per foot. This offer will be good for the next sixty (60) days.

\* \* \*

If you wish to take advantage of this opportunity, please contact the undersigned, preferably in writing, to express your willingness to do so and we will prepare the necessary deed and arrange for a date of mutual convenience for there to be an exchange of the deed for the purchase amount.

Ms. Horvath's name, complete with her correct address, was listed by Ms. Frinks's counsel among the sixty-two recipients of the letter. Ms. Horvath testified at trial that she did not remember receiving the letter.

On October 3, 2012, Ms. Frinks filed a complaint against Ms. Horvath, alleging trespass and requesting declaratory judgment quieting her title to the Disputed Property and a permanent injunction mandating Ms. Horvath "to remove any facility or improvements she had placed or constructed upon [Ms. Frinks's] property."[5] Ms. Frinks also requested damages for the value of the trespass, which she asserted amounted to not less than $3,000.00 per year. She attached to the complaint copies of the relevant recorded deeds and an excerpt from "TVA Section 26A Regulations: Approval of Construction in the Tennessee River System and Regulation of Structures." In particular, Ms. Frinks relied on the following regulatory subsection regarding obtaining permission to build a facility on TVA land:

> If the facility is to be built on TVA land, the applicant must, in addition to the other requirements of this part, own the fee interest in or have an adequate leasehold or easement interest of sufficient tenure to cover the normal useful life of the proposed facility in land immediately adjoining the TVA land. If the facility is to be built on private land, the applicant must own the fee interest in the land or have an adequate leasehold or easement interest in the property where the facility will be located. TVA recognizes, however, that in some cases private property has been subdivided in a way that left an intervening strip of land between the upland boundary of a TVA flowage easement and the waters of the reservoir, or did not convey to the adjoining landowner the land underlying the waters of the reservoir, or did not convey to the adjoining landowner the land underlying the waters of the reservoir. In some of these situations, the owner of the intervening strip or underlying land cannot be identified or does not object to construction of water-use facilities by the adjacent landowner. In these situations, TVA may exercise its discretion to permit the facility, provided there is no objection from the fee owner of the intervening strip or underlying land. A TVA permit conveys no property interest. The applicant is responsible for locating the proposed facility on qualifying land and ensuring that there is no objection from any owner of such land. TVA may require the applicant to provide appropriate verification of ownership and lack of objection, but TVA is not responsible

---

[5] In the instant complaint, Ms. Frinks also named as defendants, respectively, separate landowners Lisa Mims Cope and Gladys M. Roach. During trial in this matter, Ms. Frinks's counsel announced that the action against Ms. Cope had been settled. The record contains no indication of the disposition of the action against Ms. Roach.

for resolving ownership questions. In case of a dispute, TVA may require private parties requesting TVA action to grant or revoke a TVA permit to obtain a court order declaring respective land rights. TVA may exercise its discretion to permit a facility on TVA land that is located up or downstream from the land which makes the applicant eligible for consideration to receive a permit.

18 C.F.R. § 1304.2(a) (2003).

Ms. Horvath, acting without benefit of counsel, filed an answer on December 3, 2012. She admitted to matters of public record, including the description in the complaint of the recorded deed to her 5.9-acre property at Douglas Lake. Ms. Horvath denied the allegation of trespassing. Regarding the placement of her dock and lack of consent from Ms. Frinks, Ms. Horvath stated:

> [Ms. Horvath] admits she maintains a dock upon Douglas Lake immediately adjacent to her residence. The remaining allegations in said paragraph are admitted in that [Ms. Horvath] has never known and still does not know [Ms. Frinks's] consent or permission was necessary for the placement of the dock.

Although Ms. Horvath averred in her answer that this action was "time barred by the doctrine of laches and/or the applicable statute of limitations," she did not state that she was asserting an affirmative defense of adverse possession. She also did not file a counterclaim.

In the meantime, the trial court entered an order on October 18, 2013, consolidating this action with similar lawsuits filed by Ms. Frinks against landowners: styled, respectively, *Donna (Babb) Frinks v. Garland E. Layman et al.* and *Donna (Babb) Frinks v. Sarah L. Collier* [*Parker*]*, and Woodrow Sanford and wife Darlene Sanford.* In the consolidation order, the trial court continued the action styled *Frinks v. Layman*, and the record contains no further indication of proceedings in that action. Following entry of the consolidation order, Chancellor Telford E. Fogerty, Jr., who had initially presided over the instant action, recused himself by order entered December 15, 2014, from this action, the actions against Ms. Collier and the Sanfords, and an action styled *Donna (Babb) Frinks v. Donald L. Kivett et al.* On September 6, 2015, our Supreme Court appointed Chancellor Douglas T. Jenkins to hear by interchange the consolidated actions against Ms. Horvath, Ms. Collier, the Sanfords, and Mr. Kivett.

The trial court conducted a bench trial on November 6, 2015. Ms. Horvath and Ms. Collier each respectively appeared at trial and testified without benefit of counsel.[6] Ms. Frinks also testified. Regarding the placement of her dock, Ms. Horvath testified that she acquired title to her Douglas Lake property on November 14, 1992, and installed the dock right away. She stated that typically, when the water level was low enough that the dock was not floating, approximately four months per year, the dock rested on the side of a steep slope. Ms. Horvath stated that she had always believed that TVA owned and controlled the property between her boundary line and the lake. She acknowledged that she had never sought a permit from TVA to install the dock at issue. According to Ms. Horvath, she installed a larger dock at some point in the five or ten years prior to trial. When questioned regarding whether a period of time elapsed between removal of the old dock and installment of the larger one, Ms. Horvath stated: "Not really. It was basically just put a bigger one in there." When pressed by Ms. Frinks's counsel as to whether it "[c]ould have been a few days" that went by while she was replacing the dock, Ms. Horvath acknowledged that "[i]t could have."

In a judgment entered April 6, 2016, the trial court dismissed Ms. Frinks's complaint upon finding that although Ms. Frinks held title to the Disputed Property, Ms. Horvath had established adverse possession of the portion on which her dock sat when water levels were down and over which her dock floated when levels were high. Pursuant to Tennessee Rule of Civil Procedure 54.02, the court certified the April 6, 2016 judgment as final in the action against Ms. Horvath.[7] Ms. Frinks timely appealed.

## II. Issues Presented

Ms. Frinks presents three issues on appeal, which we have restated as follows:

1.      Whether the trial court erred by allowing Ms. Horvath to raise the affirmative defense of adverse possession during trial when she previously had not pled adverse possession.

2.      Whether the trial court erred by finding that Ms. Horvath had established adverse possession.

---

[6] The trial court also addressed Ms. Frinks's actions against the Sanfords and Mr. Kivett, ruling that Ms. Frinks was entitled to a default judgment against Mr. Kivett and continuing the Sanfords' case upon finding that the Sanfords had transferred ownership of their affected parcel to their son, whom the court added as a party defendant.

[7] The record in this matter also contains a "Final Judgment," entered April 27, 2016, in which the trial court declared Ms. Frinks the owner of the property on which Ms. Collier testified that she had placed a dock in 2011. The court ordered Ms. Collier to remove her dock from Ms. Frinks's property.

7

3.     Whether the trial court erred by declining to order removal of Ms. Horvath's allegedly trespassing dock.

## III. Standard of Review

Our review of the trial court's judgment following a non-jury trial is *de novo* upon the record, with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Hughes v. Metro. Gov't of Nashville & Davidson County*, 340 S.W.3d 352, 360 (Tenn. 2011).

In reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading." *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). We note also that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 463 (citing *Carter v. Bell*, 279 S.W.3d 560, 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young v. Barrow,* 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

## IV. Affirmative Defense of Adverse Possession

In contending that the trial court erred by finding that Ms. Horvath had established the affirmative defense of adverse possession, Ms. Frinks specifically argues that (1) Ms. Horvath should not have been allowed to argue adverse possession at trial because she had not pled it beforehand, (2) Ms. Horvath had not maintained her dock on the disputed property for the full twenty years required for common law adverse possession by the time of the complaint's filing, (3) Ms. Horvath had not possessed the disputed property

under the color of title required for adverse possession pursuant to Tennessee Code Annotated § 28-2-102 (2000), (4) Ms. Frinks had no knowledge of her ownership of the Disputed Property until 2006 and no knowledge of Ms. Horvath's dock until she subsequently viewed an aerial photograph, and (5) Ms. Horvath's possession was not continuous and uninterrupted. Upon our careful review, we determine that the trial court did not err by considering the affirmative defense of adverse possession because the parties tried the defense by implied consent. We further determine that although the trial court erred in finding that Ms. Horvath had adversely possessed the area of land under her dock for a full twenty years prior to commencement of this action, the error was harmless because Ms. Horvath did establish the seven-year period necessary for the statutory defense provided, regardless of color of title, by Tennessee Code Annotated § 28-2-103 (2000). We will address each of Ms. Frinks's arguments in turn.

Acquisition of property by adverse possession may operate as a bar to recovery of the property by the title holder, and it may also operate to vest the adverse possessor with title. *See Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 375 (Tenn. 2007); *Wilson v. Price,* 195 S.W.3d 661, 666-67 (Tenn. Ct. App. 2005). As our Supreme Court has explained regarding common law adverse possession:

> In our state, common law adverse possession rests upon the proposition "that, where one has remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will be presumed." Color (or assurance) of title is not required. In order to establish adverse possession under this theory, or in any statutorily based claim, the possession must have been exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time. Adverse possession is, of course, a question of fact. The burden of proof is on the individual claiming ownership by adverse possession and the quality of evidence must be clear and convincing. The actual owner must either have knowledge of the adverse possession, or the possession must be so open and notorious to imply a knowledge of the adverse possession, or the possession must be so open and notorious to imply a presumption of that fact. When an adverse possessor holds the land for a period of twenty years, even absent any assurance or color of title, the title vests in that possessor.

*Cumulus*, 226 S.W.3d at 376-77 (internal citations omitted). Our Supreme Court has elucidated the statutory forms of adverse possession as follows in pertinent part:

> [L]imitations of real property actions, i.e., the statutory forms of adverse possession, are found in Tennessee Code Annotated sections 28-2-101 through 103. Initially, land granted by the state, for example, requires only

a period of seven years' adverse possession under a recorded assurance or color of title, terms which are used interchangeably. Tenn. Code Ann. § 28-2-101 (2000); *see, e.g., Slatton v. Tenn. Coal, Iron, & R.R. Co.,* 109 Tenn. 415, 75 S.W. 926, 927 (Tenn. 1902). Another provision, Tennessee Code Annotated section 28-2-105, does not require any proof of a state land grant but does prescribe assurance of title for thirty years and a minimum of seven years of adverse possession. The limitations on actions statutes, described in Tennessee Code Annotated sections 28-2-102 and 103, are defensive only, barring only the remedy. *Kittel v. Steger,* 121 Tenn. 400, 117 S.W. 500, 503 (Tenn. 1909). These rights may be utilized by the adverse holder only in the defense of a suit and not as a means to bar use by the rightful owner. *Slavely v. Bridges,* 57 Tenn. App. 372, 418 S.W.2d 472, 479 (Tenn. Ct. App. 1967). Tennessee Code Annotated section 28-2-102 provides a defense when there is assurance of title and seven years possession; this statute serves as protection as to the entire boundary as described. Section 28-2-103, which does not involve color of title, protects an adverse holder after a period of seven years but only as to that portion of the land in his actual possession. *Shearer v. Vandergriff,* 661 S.W.2d 680, 682 (Tenn. 1983).

*Cumulus,* 226 S.W.3d at 376 (footnote omitted).

### A. Affirmative Defense Tried by Implied Consent

Ms. Frinks argues that the trial court erred by allowing Ms. Horvath to raise the affirmative defense of adverse possession for the first time during her opening statement at trial. Ms. Frinks asserts that, pursuant to Tennessee Rule of Civil Procedure 8.03, Ms. Horvath waived the defense of adverse possession by failing to raise it in prior pleadings. Although Ms. Horvath maintains on appeal that she "did claim Adverse Possession," she does not dispute that she failed to include adverse possession as an affirmative defense in her answer to the complaint. It is also clear from the record that Ms. Horvath did not assert a counterclaim at any time. Upon our thorough review of the record, however, we determine that the parties tried by implied consent, as an issue, the affirmative defense of adverse possession.

Tennessee Rule of Civil Procedure 8.03 provides:

In pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute accord and satisfaction, arbitration and award, express assumption of risk, comparative fault (including the identity or description of any other alleged tortfeasors),

discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, statute of repose, waiver, workers' compensation immunity, and any other matter constituting an affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation.

We note that although common law adverse possession may be invoked either offensively or defensively, the statutory forms of adverse possession may be invoked solely as affirmative defenses. *See Cumulus*, 226 S.W.3d at 376-77; *see, e.g., Brewer v. Piggee*, No. W2006-01788-COA-R3-CV, No. 2007 WL 1946632, at *7-9 (reversing the trial court's grant of the plaintiff's motion for judgment on the pleadings in part because the trial court had failed to address the defendant's "affirmative defense" of adverse possession pursuant to Tenn. Code Ann. § 28-2-102).

Tennessee Rule of Civil Procedure 15.02 creates an exception to the general rule that "[j]udgments awarded beyond the scope of the pleadings are void." *See Randolph v. Meduri,* 416 S.W.3d 378, 384 (Tenn. Ct. App. 2011). Rule 15.02 provides in pertinent part:

15.02. Amendments to Conform to the Evidence.—When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

"'Generally speaking, trial by implied consent will be found where the party opposed to the amendment knew or should reasonably have known of the evidence relating to the new issue, did not object to this evidence, and was not prejudiced thereby.'" *Hiller v. Hailey*, 915 S.W.2d 800, 804 (Tenn. Ct. App. 1995), *perm. app. denied* (Tenn. Dec. 18, 1995) (quoting *Zack Cheek Builders v. McLeod,* 597 S.W.2d 888, 890-91 (Tenn. 1980)). As this Court has explained, "'[t]rial by implied consent is not shown by the presentation of evidence that is relevant to an unestablished issue when that evidence is also relevant to the established issue.'" *Christmas Lumber Co., Inc. v.. Valiga,* 99 S.W.3d 585, 593 (Tenn. Ct. App. 2002) (quoting *McLemore v. Powell,* 968 S.W.2d 799, 803 (Tenn. Ct. App. 1997)). "The determination of whether there was implied consent rests in the discretion of the trial judge, whose determination can be reversed only upon a finding of abuse." *Zack Cheek Builders, Inc. v. McLeod*, 597 S.W.2d 888, 891 (Tenn. 1980).

11

At trial, the parties were sworn in as witnesses following an opening statement delivered by Ms. Frinks's counsel.  The trial court then asked Ms. Horvath to explain in what ways she disagreed with Ms. Frinks's counsel's statement.  As Ms. Horvath explained her position, the trial court questioned her by way of eliciting testimony from her prior to cross-examination.  During the court's questioning, the following exchange ensued:

The Court:  [A]re you telling me that you have just always freely gone to and from the edge of the water since [19]92; is that what you are telling me?

Mr. Horvath:  Yes, because I thought TVA owned all that down in there.  See, what it is, there is a bank.  My dock sits on the bank, a steep bank.  It goes into a creek bed.  I mean, I do not have no beach property out from my house or anything.  I am on a bank.  The dock sits on a bank and the bank goes into a creek bed.  I mean, we are up in a hollow.  I mean, it is – there is just a narrow strip there going up in there.

The Court:  Are you telling me under oath that each and every moment and second of time since 1992 that you had a dock where your dock presently is?

Ms. Horvath:  Yes, and I was told that I could get reverse possession since I had had it there for so long.

The Court:  Do you know of any defense under the law that would reverse possession?

Ms. Frinks's Counsel:  I will read directly from the *Cumulus Broadcasting* case, Supreme Court of Tennessee.

The Court:  What did it say?

Ms. Frinks's Counsel:  ["]In order to establish prescriptive easement under the common law of this state, the usage

12

must be adverse under claim of right, continuous, uninterrupted, open, visible, exclusive and with the knowledge and acquiescence of the owner servient tenement."

That is her problem. Mrs. Frinks was in Florida and didn't know until 2006 that anybody, you know, was trespassing on her.

Ms. Horvath:                    But that was there all the time.

The Court:                      Was that with or without color of title?

Ms. Frinks's Counsel:           Well, I guess it really wouldn't matter, but she would not have had color of title beyond the 1002 contour, which is where her deed goes to, so she has no color of title. Beyond the area where her dock is is an area where she has never owned.

The Court:                      Does she – so what is her time period, seven, 20 or 30 years?

Ms. Frinks's Counsel:           Well, it would be 20 if she – with no color of title, it would be 20; but again, it would require that Mrs. Frinks knew and sat back and did nothing or acquiesced and that is the problem.

Ms. Horvath:                    I thought it was seven years.

The Court:                      All right. Now, I understand, okay.

Ms. Frinks's Counsel:           Well, we will concede 30 if she says –

The Court:                      Well –

Ms. Horvath:                    I was told it was seven.

The Court:                      -- I think it is 20, but I am going to look at something before I say that.

13

| | |
|---|---|
| Ms. Frinks's Counsel: | It is 20, to be honest with the Court. It is 20 under prescriptive easements. The seven year and the 30 year is the statutory approach, but the common law approach is 20. |
| The Court: | I gotcha. |
| Ms. Horvath: | I wasn't hiding my dock, Your Honor. |
| The Court: | I understand. |
| Ms. Horvath: | My dock sat there the whole time. |
| The Court: | I understand. |
| Ms. Horvath: | Nobody ever came up, told me you are trespassing on my land. Nobody ever put up signs saying you are not supposed to have a dock here. |
| The Court: | Let me ask you this: Has TVA ever revoked your dock permit or told you to remove your dock, or is it still sitting there? |
| Ms. Horvath: | I never had a dock permit. |

On appeal, Ms. Frinks argues that because Ms. Horvath had not pled the affirmative defense of adverse possession, "counsel for [Ms. Frinks] was not prepared to state the date of the filing of this action." Ms. Frinks thereby asserts that her counsel was not prepared to inform the trial court that this action was commenced six weeks shy of twenty years after Ms. Horvath obtained title to her property. We determine Ms. Frinks's argument in this regard to be unavailing. Ms. Horvath's warranty deed was introduced into the record during trial when Ms. Frinks's counsel presented a copy of it in response to a question from the trial court. The complaint, of course, originally had been filed by Ms. Frinks. The record before us demonstrates, as it would have to the trial court, that Ms. Horvath's warranty deed was executed on November 14, 1992, and that Ms. Frinks filed the complaint commencing this action on October 3, 2012, nineteen years and forty-six weeks later.[8] Ms. Frinks's argument that she was prejudiced by lack of notice that she would need to inform the trial court of the complaint's filing date is unavailing.

---

[8] Upon Ms. Frinks's motion during the pendency of the appeal, this Court entered an order allowing Ms. Frinks to supplement the record with legible copies of the front and back pages of the complaint because

Moreover, Ms. Frinks's counsel's readiness at trial to discuss the time periods relevant to statutory and common law adverse possession, as well as prescriptive easement, and to quote our Supreme Court's decision in *Cumulus*, 226 S.W.3d 366, demonstrates that counsel was aware of the potential defense and, in fact, engaged in a counter-defense without raising an objection that Ms. Horvath had not originally pled adverse possession. In addition, counsel subsequently cross-examined Ms. Horvath regarding the placement of her newer, larger dock in a manner clearly designed to determine whether her possession had been continuous and uninterrupted, an element of adverse possession. *See Cumulus,* 226 S.W.3d at 376. We conclude that inasmuch as Ms. Frinks knew of the evidence relating to adverse possession, did not object to the evidence, and was not prejudiced by the introduction of such evidence, the affirmative defense of adverse possession was tried as an issue by implied consent. *See Hiller*, 915 S.W.2d at 804.

We note that Ms. Horvath, acting *pro se*, did not request to amend her answer to add adverse possession as an affirmative defense. However, in ruling on the theory of adverse possession, the trial court impliedly exercised its discretion to find that the defense had been tried. *See* Tenn. R. Civ. P. 15.02 (providing that failure to amend a pleading to include issues tried by express or implied consent "does not affect the result of the trial of these issues"). In any event, we determine that Ms. Frinks waived any objection to the defense of adverse possession by failing to raise an objection before the trial court. *See, e.g., C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 679 (Tenn. Ct. App. 2007), *perm. app. denied* (Tenn. May 14, 2007) ("[The plaintiff] raised no objection to the trial court's decision upon the ground that it was based upon an affirmative defense not raised in accordance with Rule 8.03, nor did [the plaintiff] otherwise object to [the defendant's] failure to comply with that Rule, and it is well-settled that an issue not raised in the trial court will not be entertained on appeal.").

## B. Finding of Adverse Possession

In dismissing the instant action, the trial court in its final judgment made the following specific findings of fact in pertinent part:

> [I]t appearing to the Court that Donna Frinks owns the property below contour 1002, adjacent to the property of Horvath consisting of 5.9 acres, and designated as Map 78, Parcel 1.01 on the tax rolls for Jefferson County,

the date of filing was illegible on the copy originally in the record. As Ms. Frinks noted in the relevant motion, however, the trial court's Rule Docket Report reflected the date of the complaint's filing. Our analysis of this issue is not affected by the illegibility of the filing date on the copy of the complaint first submitted to this Court.

Tennessee, and it further appearing to the Court that Horvath has had a dock adjacent to her property, located on the property of Donna Frinks when water levels are down and floating above it when the waters are high since 1992, and it further appearing to the Court that although Donna Frinks had no knowledge of the trespass because she resides either in the State of Florida and near Sweetwater, Tennessee, the Court finds that she should have known of the trespass by Horvath and by taking no action for more than twenty (20) years since the onset of the trespass by Horvath, that Frinks has acquiesced in the trespass; the Court further finds that the Horvath possession was continuous and uninterrupted even when the dock was floating above the Frinks property, even though Horvath concluded she did not possess against Frinks when her dock was floating[.]

We note at the outset that on appeal, Ms. Frinks characterizes the trial court's finding as one of an "easement by prescription" based on adverse possession. However, the trial court did not use the term, "easement," in the final judgment. Our Supreme Court has described "prescriptive easement" as "[a] doctrine related to adverse possession," explaining that "[g]enerally, this easement arises when a use, as distinguished from possession, is adverse rather than permissive, open and notorious, continuous and without interruption, and for the requisite period of prescription." *Cumulus*, 226 S.W.3d at 378 (quoting Ralph E. Boyer, *Survey of the Law of Property* 569-70 (3d ed. 1981)). The "primary distinction" between the doctrines of adverse possession and prescriptive easement "is that the adverse possessor *occupied* the land of another, whereas, in prescription, there is merely adverse *use* of the land of another." *Cumulus*, 226 S.W.3d at 378 (emphasis in original). "The requisite period of time of continuous use and enjoyment for a prescriptive easement is twenty years." *Id.* at 379.

In reviewing the trial court's final judgment and oral ruling announced at the close of trial, we determine that the court did not conclude that Ms. Horvath had established a prescriptive easement. At the close of trial, the court stated the following in pertinent part:

[T]he Court, of course, finds that through inadvertence, whatever it might have been, all of Ms. Frinks['s] property was not liquidated back at the time they thought they were liquidating it and she does, in fact, still own the property that she claims in the pleadings is hers, but the facts of Mrs. Horvath's case are such that the Court believes that she has had her dock there for a sufficient amount of time, be it seven or 20 years to acquire a right to maintain the dock.

The Court is not going to pass on whether or not she has a valid permit or not, but the Court does think that she has a sufficient right acquired by the passage of time to at least apply for a permit and an easement to maintain her dock, but the Court acknowledges that Mrs. Frinks does, in fact, own the land under the water where that dock is.

Mrs. Horvath testified, and I believe told me the truth that she has had a dock out there since 1992, and I believe that is a sufficient amount of time. That is a long time. Now, [Ms. Frinks's counsel], in connection with what you said about Mrs. Frinks didn't really [know she] owned the property, therefore, it was hard for her to acquiesce, I think the law in Tennessee is that if you own property you are under a duty to know it, know its boundaries, manage it in a diligent manner, and she at least should have known that that dock was on her property because it was there for all the world to see, and I believe that that by operation of law is, in fact, acquiescence on the part of Mrs. Frinks because of the passage of so much time.

So the request for injunctive relief and damages against Mrs. Horvath would be denied by the Court and the Complaint in so far as it asks for relief against her would be dismissed.

* * *

I declare Mrs. Frinks to be the owner of the underlying property that she claims, but I believe that Mrs. Horvath has had a dock there a sufficient amount of time to acquire the right to leave it here.

We emphasize that "a court speaks through its orders and not through the transcript," *see Alexander v. JB Partners*, 380 S.W.3d 772, 777 (Tenn. Ct. App. 2011), and we reiterate that the trial court did not use the term, "easement," in its final judgment. Furthermore, even in comments made at the close of trial, the court's only mention of an easement was in relation to whether Ms. Horvath had "a sufficient right acquired by the passage of time" to apply with TVA for a dock permit and "an easement to maintain her dock." Moreover, in finding that Ms. Horvath had maintained a dock located on Ms. Frinks's property "when water levels [were] down and floating above it when the waters [were] high since 1992," the court found that Ms. Horvath had "possessed," or occupied, the relevant portion of the Disputed Property, rather than merely using it. We therefore analyze the trial court's finding as one of adverse possession.

17

As to the time period of Ms. Horvath's possession, Ms. Frinks asserts that the trial court erred by finding that Ms. Horvath had possessed the portion of the Disputed Property under her dock for the period of twenty years required for common law adverse possession. We agree with Ms. Frinks on this point. The trial court appeared to base its finding of "more than twenty years" on testimony related to the amount of time that had passed by the time of trial in November 2015. However, the determinative time period tolls with commencement of the action. *See, e.g., Boyd v. Ducktown Chem. & Iron Co.*, 89 S.W.2d 360, 364 (Tenn. Ct. App. 1935), *perm app. denied* (Tenn. Jan. 11, 1936) (analyzing a common law adverse possession claim from the time period "twenty years before the bringing of this suit"); *Logan v. Estate of Cannon*, No. E2015-02254-COA-R3-CV, 2016 WL 5344526, at *10 (Tenn. Ct. App. Sept. 23, 2016) (analyzing a claim for common law adverse possession and noting that "the twenty-year period prior to commencement of the instant action began in February 1991."). For her part, Ms. Horvath appears to misunderstand the tolling of the twenty-year period, but she acknowledges that she did not place a dock on the Disputed Property until the point at which she purchased her tract of land. The time period between Ms. Horvath's acquisition of title to her property on November 14, 1992, and the commencement of this action on October 3, 2012, was nineteen years and forty-six weeks, six weeks short of twenty years. The trial court erred in finding that the requisite period for common law adverse possession had been met.

Our analysis does not end here, however. In contrast to the common law form, certain statutory provisions regarding adverse possession require a seven-year period. *See* Tenn. Code Ann. §§ 28-2-101 to -103 (2000); *Cumulus*, 226 S.W.3d at 376. Ms. Frinks asserts that statutory adverse possession is unavailable to Ms. Horvath because it requires color of title, which it is undisputed Ms. Horvath does not hold as to the portion of Disputed Property upon or over which her dock has been located. *See Cumulus,* 226 S.W.3d at 376 n.3 (defining color of title as "'something in writing which at face value, professes to pass title but which does not do it, either for want of title in the person making it or from the defective mode of the conveyance that is used.'") (quoting *Thompson on Real Property* § 87.12, at 145 (David A. Thomas ed., 1994)). The warranty deed to Ms. Horvath's property provides the following property description in relevant part:

> BEGINNING in the center line of a road, corner with Tract No. 11 of said Subdivision; thence with the center line of said road, North 21 degrees 00 minutes West, 300 feet to a point in the center line of said road, corner with Tract No. 9 of said Subdivision; thence South 69 degrees 45 minutes East 900 feet to a point in the 1002 contour line of Douglas Lake and a corner with Lot No. 9 of said Subdivision; thence in a Southerly direction with the 1002 contour line of Douglas Lake, a distance of 375 feet with the 1002

18

contour line of Douglas Lake; thence North 69 degrees 45 minutes East 815 feet to the point of BEGINNING, and containing 5.9 acres, more or less.

Ms. Horvath's relevant boundary line thus follows the 1002 contour line of Douglas Lake, the contour line below which Ms. Frinks's property lies. Ms. Horvath acknowledges that prior to learning of Ms. Frinks's claim, she had believed that the property between her boundary line and Douglas Lake was controlled by TVA and knew that it was not included in her title.

Although Ms. Frinks is correct in asserting that color of title is required to establish an affirmative defense of adverse possession pursuant to Tennessee Code Annotated § 28-2-102, she does not address the defense afforded, regardless of color of title, by Tennessee Code Annotated § 28-2-103, which "does not involve color of title" and "protects an adverse holder after a period of seven years but only as to that portion of the land in his actual possession." *See Cumulus*, 226 S.W.3d at 376; *Phelps v. Benke*, No. M2015-02212-COA-R3-CV, 2017 WL 113965, at *6 (Tenn. Ct. App. Jan. 11, 2017) ("Color of title is not necessary . . . to assert a defense under Tennessee Code Annotated section 28-2-103."). Tennessee Code Annotated § 28-2-103 provides:

(a)     No person or anyone claiming under such person shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued.

(b)     No possession of lands, tenements or hereditaments shall be deemed to extend beyond the actual possession of an adverse holder until the muniment of title, if any, under which such adverse holder claims such lands, tenements or hereditaments is duly recorded in the county in which the lands are located.

As this Court has explained:

Tenn. Code Ann. § 28-2-103 bars the right of the title owner to recover property that has been adversely held for more than seven years. *Teeples v. Key,* 500 S.W.2d 452, 456 (Tenn. Ct. App. 1973). The statute does not convey title, but may be used defensively by the adverse holder. It is "a defensive statute and protects the adverse holder in possession to the extent and upon the terms set forth in the statute." *Moore* [*v. Brannan*]*,* 42 Tenn. App. [542,] 564, 304 S.W.2d [660,] 662 [(Tenn. Ct. App. 1957)]; *see also Lemm* [*v. Adams*]*,* 955 S.W.2d [70,] 73 n.1 [(Tenn. Ct. App. 1997)] (stating

19

that the statute provides a valid defense but does not entitle the adverse holder to a decree granting him title).

*Michael v. Jakes,* No. M1999-02257-COA-R3-CV, 2002 WL 1484448, at *13 (Tenn. Ct. App. July 12, 2002), *perm. app. denied* (Tenn. Dec. 2, 2002); *see also Vincent v. Johnston*, No. E2013-00588-COA-R3-CV, 2014 WL 279682, at *17 (Tenn. Ct. App. Jan. 24, 2014) (holding that, pursuant to Tenn. Code Ann. § 28-2-103 and despite no color of title, the defendant had established the defense of adverse possession to the extent that his improvements had adversely encroached upon the plaintiff's property for a period of at least seven years).

We conclude that the trial court's error in calculating Ms. Horvath's adverse possession as "more than twenty years" was harmless insofar as Ms. Horvath could establish an affirmative defense by demonstrating adverse possession for a period of at least seven years pursuant to Tennessee Code Annotated § 28-2-103. We next address, within the scope of a seven-year time period, Ms. Frinks's arguments that the trial court erred in finding adverse possession because (1) Ms. Frinks had no knowledge of her ownership of the Disputed Property until 2006 and no knowledge of Ms. Horvath's dock until she subsequently viewed an aerial photograph and (2) Ms. Horvath's possession was not continuous and uninterrupted. We note that the determinative seven-year time period prior to commencement of this action began on October 3, 2005.

The trial court essentially found that Ms. Frinks was on record or constructive notice, even prior to the 2006 telephone call she received regarding her property ownership rights, to realize that the Disputed Property was hers. We agree. This Court previously has explained:

> As stated by this Court in *Associates Home Equity Services, Inc. v. Franklin Nat. Bank,* No. M2000-00516-COA-R3-CV, 2002 WL 459007 (Tenn. Ct. App. 2002) *per*[*m*]*. app. denied* (Tenn. Oct. 21, 2002):
>
> > Notice may be imparted in several ways. There may be actual notice, which is the equivalent of personal knowledge on the part of the purchaser, or there may be record notice (sometimes called 'constructive' notice), deriving from the recordation of the prior instrument or something making reference to i[t]. Finally, there is a form commonly referred to as inquiry notice, which exists when the purchaser is in possession of information or facts sufficient to cause a reasonable person to make further inquiry as to the existence and content of the unregistered document.

*Id.* at *2 n.4 (citing Toxey H. Sewell, *The Tennessee Recording System,* 50 Tenn. L. Rev. 1, 43-44 (1982)).

*Milledgeville United Methodist Church v. Melton*, 388 S.W.3d 280, 290 (Tenn. Ct. App. 2012), *perm. app. denied* (Tenn. Dec. 13, 2012).

Ms. Frinks testified that her mother grew up on the "land grant farm," which was the farm across the river from the 488-acre farm that her grandfather eventually devised to her mother. According to Ms. Frinks, the land grant farm, which had been devised to Ms. Frinks's uncle, Robert Cowan, was submerged under water when TVA built Douglas Dam. As a young child, Ms. Frinks then moved with her mother and uncle to Monroe County, where they had purchased two farms. Ms. Frinks subsequently attended Duke University, began teaching in Florida, and met and married her husband in Florida. She had lived in Florida ever since except for vacations to a cabin she and her husband purchased in Monroe County. Ms. Frinks testified that in approximately 1986, her mother brought her and her family to visit the "home place" by Douglas Lake but that she did not return again until she received the telephone call regarding her ownership rights in 2006. Ms. Frinks stated that for her mother and uncle, the loss of the land grant farm "was just such an uncomfortable, bitter subject that they both just shut down when we asked anything about it."

Although we certainly recognize and respect Ms. Frinks's family members' painful history of relinquishing their land for construction of the Douglas Dam, this does not alter the fact that the deeds on record in the office of the Jefferson County Register of Deeds, copies of which were attached to Ms. Frinks's complaint, were a matter of public record and available for her perusal at any time. We conclude that Ms. Frinks was on record or constructive notice of her ownership rights in the Disputed Property well before October 3, 2005. Moreover, given the subdivision of the nearby property into lakefront tracts in the 1950s and the open and obvious placement of Ms. Horvath's dock on the Disputed Property in 1992, we conclude that Ms. Frinks was on inquiry notice that Ms. Horvath possessed a portion of the Disputed Property well before October 3, 2005. *See generally Bobo v. City of Jackson*, No. W2015-00386-COA-R3-CV, 2015 WL 7890526, at *9 (Tenn. Ct. App. Dec. 4, 2015) ("'Inquiry notice exists when a purchaser has notice of some fact that, in accordance with human experience, is sufficiently curious or suspicious that the purchaser should be obliged to make a further inquiry into it.'") (quoting 77 Am. Jur. 2d *Vendor and Purchaser* § 385 (2006)).

Ms. Frinks also argues that Ms. Horvath's possession was not continuous and uninterrupted because Ms. Frinks installed a new dock at some point five to ten years prior to trial, resulting in "an interruption of her possession because no dock was present

21

for up to several days." Ms. Horvath asserts that as she was installing a new dock, the old one remained in place and that the two docks were essentially in the same location. During cross-examination of Ms. Horvath at trial, the following exchange ensued regarding Ms. Horvath's replacement of the old dock:

Ms. Frinks's Counsel: Was there a period of a day or two or whatever, a week, where the old one was gone and the new one wasn't there yet?

Ms. Horvath: Not really. It was basically just put a bigger one in there.

Ms. Frinks's Counsel: Did some time go by?

Ms. Horvath: I think so. It's been a long time.

Ms. Frinks's Counsel: Well, it could have been anywhere from seconds to days or months?

Ms. Horvath: Oh, I don't remember.

Ms. Frinks's Counsel: Could it have been a few days?

Ms. Horvath: It could have, I don't know. I can't remember.

Ms. Frinks's Counsel: But that would have been the last five or ten years, something like that?

Ms. Horvath: Probably.

The trial court declined to find that Ms. Horvath had abandoned her possession of the portion of Disputed Property under the dock while she replaced the old dock with a newer, larger one. Setting aside that the replacement of the old dock may have occurred more than seven years prior to commencement of the instant action, we also cannot conclude from this testimony that Ms. Horvath removed all dock material from the portion of the Disputed Property at issue for any length of time. We conclude that the evidence does not preponderate against the trial court's finding in this regard.

Finally, Ms. Frinks argues that Ms. Horvath's possession could not have been continuous and uninterrupted because it was seasonal in that the dock only rested on the land in months when the water levels were low. The trial court, however, expressly

found that the possession "was continuous and uninterrupted even when the dock was floating above the Frinks property . . . ." We agree. Ms. Frinks has cited no authority in support of her assertion that Ms. Horvath's occupation of the land underneath her dock would be interrupted by the rise of the water covering that land several months of the year. Ms. Frinks also stops short of arguing that she herself loses title to the Disputed Property below the 1002 contour line of Douglas Lake when the water levels are high. *See generally State ex rel. Cates v. W. Tenn. Land Co.*, 158 S.W. 746, 752 (Tenn. 1913) ("As these lands were . . . subject to private ownership before the formation of the lake [by an earthquake], we are of opinion that the mere fact that they [monuments of boundary] have since become submerged by a body of navigable water does not deprive the owners of their title to the land as long as they [monuments of boundary] can be reasonably identified.").[9] Ms. Frinks's argument regarding seasonality is unavailing.

We conclude that the trial court did not err in finding that Ms. Horvath successfully established clear and convincing evidence of her exclusive, actual, adverse, continuous, open, and notorious possession of the portion of the Disputed Property under her dock, regardless of whether the dock was resting on the land or floating on the water above the land. Although we determine that the trial court erred in finding this adverse possession to be for a time period of at least twenty years, we further determine this error to be harmless because Ms. Horvath did establish the seven-year time period required for the affirmative defense of adverse possession pursuant to Tennessee Code Annotated § 28-2-103. We note that the trial court properly did not vest title of any portion of the Disputed Property to Ms. Horvath because she established only the shield of an affirmative defense by operation of the seven-year statutory limitation of action. *See Michael*, 2002 WL 1484448, at *13 (explaining that although Tennessee Code Annotated § 28-2-103 "may be used defensively by the adverse holder," the statute "does not convey title"); *see also Lemm v. Adams*, 955 S.W.2d 70, 73 n.1 (Tenn. Ct. App. 1997).

## V. Injunctive Relief

Ms. Frinks also contends that the trial court erred by declining to grant her request for an injunction ordering Ms. Horvath to remove the dock. Having determined that Ms. Horvath successfully established the defense of adverse possession, we further determine that the trial court did not err by dismissing Ms. Frinks's request for injunctive relief upon the allegation of trespassing. In addition to claiming trespass, Ms. Frinks also avers

---

[9] For the purposes of review in this action, we do not find it necessary to address whether Douglas Lake is navigable in the "ordinary sense" or "legal sense," with the latter indicating that the public would maintain an easement to use the waterway above the Disputed Property despite Ms. Frinks's retention of title. *See Webster v. Harris*, 69 S.W. 782, 784 (Tenn. 1902), *overturned on other grounds by State ex rel. Cates*, 158 S.W. 746; *City of Townsend v. Damico*, No. E2013-01778-COA-R3-CV, 2014 WL 2194453, at *4-5 (Tenn. Ct. App. May 27, 2014).

that Ms. Horvath has failed to comply with a TVA requirement to obtain a permit prior to constructing an "obstruction affecting navigation, flood control or public lands or reservations along or in the Tennessee River or any of its tributaries." *See* 18 C.F.R. § 1304.1 (including boat docks in a list of obstruction examples). The trial court found in its final judgment that it did "not have jurisdiction to direct that the Tennessee Valley Authority revoke [Ms. Horvath's] permit, but [Ms. Frinks] may proceed through appropriate channels to nullify the permit." We note that Ms. Horvath acknowledged that she had never applied for or obtained a permit for her dock. In any event, we agree with the trial court that inasmuch as TVA is not a party to this action, the trial court did not have jurisdiction to grant injunctive relief against Ms. Horvath on behalf of TVA. Ms. Frinks is not entitled to injunctive relief based on the instant action.

## VI. Conclusion

For the reasons stated above, we affirm the trial court's judgment. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below. The costs on appeal are assessed against the appellant, Donna Babb Frinks.

_____
THOMAS R. FRIERSON, II, JUDGE